# EXHIBIT

# A

STATE OF RHODE ISLAND AND  PROVIDENCE PLANTATIONS

## SUPERIOR COURT

### SUMMONS

| | Civil Action File Number<br>PC-2015-1883 |
|---|---|
| Plaintiff<br>Andromeda Real Estate Partners, Llc | Attorney for the Plaintiff or the Plaintiff<br>Andrew Tugan |
| v. | Address of the Plaintiff's Attorney or the Plaintiff |
| Defendant<br>Commonwealth Land Title Insurance Company | 50 KENNEDY PLAZA<br>STE 1500<br>PROVIDENCE RI 02903 |
| Licht Judicial Complex<br>Providence/Bristol County<br>250 Benefit Street<br>Providence RI 02903<br>(401) 222-3250 | Address of the Defendant<br>One State Street Suite 600<br>Providence RI 02908 |

TO THE DEFENDANT, Commonwealth Land Title Insurance Company:

The above-named Plaintiff has brought an action against you in said Superior Court in the county indicated above. You are hereby summoned and required to serve upon the Plaintiff's attorney, whose address is listed above, an answer to the complaint which is herewith served upon you within twenty (20) days after service of this Summons upon you, exclusive of the day of service.

If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. Your answer must also be filed with the court.

As provided in Rule 13(a) of the Superior Court Rules of Civil Procedure, unless the relief demanded in the complaint is for damage arising out of your ownership, maintenance, operation, or control of a motor vehicle, or unless otherwise provided in Rule 13(a), your answer must state as a counterclaim any related claim which you may have against the Plaintiff, or you will thereafter be barred from making such claim in any other action.

| This Summons was generated on 5/7/2015. | /s/ Henry Kinch<br>Clerk |
|---|---|

Witness the seal/watermark of the Superior Court

SC-CMS-1 (revised July 2014)

A true copy attest

*Fony J Kelly* # 110

Date 5/13/15

STATE OF RHODE ISLAND AND   PROVIDENCE PLANTATIONS

## SUPERIOR COURT

| | |
|---|---|
| **Plaintiff**<br>Andromeda Real Estate Partners, Llc<br>   v.<br>**Defendant**<br>Commonwealth Land Title Insurance Company | **Civil Action File Number**<br>PC-2015-1883 |

### PROOF OF SERVICE

   I hereby certify that on the date below I served a copy of this Summons, complaint, Language Assistance Notice, and all other required documents received herewith upon the Defendant, Commonwealth Land Title Insurance Company, by delivering or leaving said papers in the following manner:

☐ With the Defendant personally.

☐ At the Defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein.
   Name of person of suitable age and discretion _____
   Address of dwelling house or usual place of abode _____
   _____
   Age _____
   Relationship to the Defendant _____

☐ With an agent authorized by appointment or by law to receive service of process.
   Name of authorized agent _____
   If the agent is one designated by statute to receive service, further notice as required by statute was given as noted below.
   _____

☐ With a guardian or conservator of the Defendant.
   Name of person and designation _____

☐ By delivering said papers to the attorney general or an assistant attorney general if serving the state.

☐ Upon a public corporation, body, or authority by delivering said papers to any officer, director, or manager.
   Name of person and designation _____

Page 1 of 2

SC-CMS-1 (revised July 2014)

STATE OF RHODE ISLAND AND  PROVIDENCE PLANTATIONS

## SUPERIOR COURT

Upon a private corporation, domestic or foreign:
- ☐ By delivering said papers to an officer or a managing or general agent.
  Name of person and designation _____
- ☐ By leaving said papers at the office of the corporation with a person employed therein.
  Name of person and designation _____
- ☐ By delivering said papers to an agent authorized by appointment or by law to receive service of process.
  Name of authorized agent _____
  If the agent is one designated by statute to receive service, further notice as required by statute was given as noted below.
  _____
  _____

☐ I was unable to make service after the following reasonable attempts: _____
_____

SERVICE DATE: _____ / _____ / _____          SERVICE FEE $ _____
             Month    Day    Year

Signature of SHERIFF or DEPUTY SHERIFF or CONSTABLE _____

SIGNATURE OF PERSON OTHER THAN A SHERIFF or DEPUTY SHERIFF or CONSTABLE MUST BE NOTARIZED.

_____
Signature

State of _____
County of _____

On this _____ day of _____, 20____, before me, the undersigned notary public, personally appeared _____ ☐ personally known to the notary or ☐ proved to the notary through satisfactory evidence of identification, which was _____, to be the person who signed above in my presence, and who swore or affirmed to the notary that the contents of the document are truthful to the best of his or her knowledge.

          Notary Public: _____
          My commission expires: _____
          Notary identification number: _____

SC-CMS-1 (revised July 2014)

ase Number: PC CaseS:8b:15-cv-00224-JJM-LDA    Document 1-1    Filed 06/01/15    Page 5 of 62 PageID #: 9
iled in Providence/Bristol County Superior Court
ubmitted: 5/6/2015 3:57:01 PM
nvelope: 183463
eviewer: Lynn Gaulin

STATE OF RHODE ISLAND
PROVIDENCE, SC

SUPERIOR COURT

ANDROMEDA REAL ESTATE          :
PARTNERS, LLC                  :
        Plaintiff,           :
                         :
    v.                         :    C.A. No. *PC 2015-1883*
                         :
COMMONWEALTH LAND TITLE        :
INSURANCE CO.,                 :
        Defendant.           :

## COMPLAINT AND JURY DEMAND

### Introduction

1.     Plaintiff Andromeda Real Estate Partners, LLC ("Andromeda") brings this action for declaratory judgment, breach of contract, and breach of implied covenant of good faith and fair dealing against Defendant Commonwealth Land Title Insurance Company ("Commonwealth").

2.     Andromeda seeks a declaratory judgment ordering Commonwealth to provide Andromeda with a defense to the entire Superior Court action pending against Andromeda – *Patrick T. Conley, Gail C. Cahalan-Conley and Sedona Associates, LLP v. Mill River Lending Trust; and Andromeda Real Estate Partners, LLC,* C.A. No.: PC 14-3344 (the "Lawsuit").

3.     Andromeda seeks a declaratory judgment ordering Commonwealth to pay all costs and fees of independent counsel selected by Andromeda in order to defend against the Lawsuit.

4.     Plaintiffs in the Lawsuit allege that Andromeda and Mill River Lending Trust ("Mill River") conspired so that Andromeda could purchase certain real estate identified as Tax Assessor's Plat 23, Lot 71; Plat 24, Lot 66; Plat 24, Lot 67 in the Town of Smithfield, Rhode

iled in Providence/Bristol County Superior Court
ubmitted: 5/6/2015 3:57:01 PM
nvelope: 183463
eviewer: Lynn Gaulin

Island (the "Property") at a price below any commercially reasonable value of the Property. Plaintiffs seek, among other relief, a declaratory judgment invalidating the foreclosure sale at which Andromeda purchased the Property.

5.      Andromeda purchased a title insurance policy ("the Policy") from Commonwealth, in which Commonwealth agreed to defend Andromeda against claims such as those presented in the Lawsuit.

6.      Plaintiffs in the Lawsuit allege that Andromeda engaged in intentional, wrongful conduct relating to the foreclosure sale. Andromeda denies these allegations, but if proven, such allegations would preclude Andromeda from obtaining indemnification from Commonwealth under the Policy. Therefore, Commonwealth and Andromeda have a conflict of interest because of the potential application of exclusions in the title insurance policy.

7.      Commonwealth refuses to defend Andromeda except as to Count IV of the Lawsuit and Commonwealth refuses to pay for independent counsel selected by Andromeda.

### Parties

8.      Andromeda is a Rhode Island limited liability company with a principal place of business located at 1849 Old Louisquisset Pike, Lincoln, Rhode Island.

9.      Commonwealth is a Florida corporation that conducts business in the State of Rhode Island.

### Jurisdiction

10.      The Court has jurisdiction over this matter pursuant to the Uniform Declaratory Judgment Act, R.I. Gen Laws §§ 9-30-1 et seq. Under the Uniform Declaratory Judgment Act, the Superior Court has the "power to declare rights, status, and other legal relations whether or

2

ase Number: PC-2015-1883
iled in Providence/Bristol County Superior Court
ubmitted: 5/6/2015 3:57:01 PM
nvelope: 183463
eviewer: Lynn Gaulin

not relief is or could be claimed." Further, the Superior Court "may grant additional affirmative relief based on the declaratory judgment."

11.     The Court also has jurisdiction over this matter pursuant to R.I. Gen. Laws § 8-2-13, which gives the Superior Court "exclusive original jurisdiction of suits and proceedings of an equitable character . . . ."

Facts

12.     On June 5, 2014 (the "Purchase Date"), for $152,000, Andromeda purchased the Property from Mill River Lending Trust ("Mill River") at a foreclosure sale.

13.     On July 3, 2014 (the "Closing Date"), Andromeda took title to the Property through a Mortgagee's Deed recorded in the Land Evidence Records of the Town of Smithfield, Rhode Island in Book 964, at Page 81.

14.     Also on July 3, 2014, in exchange for valid consideration from Andromeda, Commonwealth issued Andromeda an Owner's Policy of Title Insurance bearing Policy No. 81306-91541914 (the "Policy") in the amount of $152,000.00. The Policy insures Andromeda's title to the Property against risks including, among other things, that title to the Property is unmarketable, defective, or subject to liens or encumbrances not specifically excepted from coverage in the Policy. A copy of the Policy is attached as Exhibit A.

15.     Andromeda purchased the Policy through the law firm of Glenn J. Andreoni, Inc. Attorney Andreoni was Commonwealth's authorized agent for the purpose of issuing the Policy. At the same time, Attorney Andreoni was Andromeda's closing attorney.

16.     Prior to the Closing Date, Commonwealth did not identify or disclose to Andromeda any defects, liens, or encumbrances on the Property that would have affected the marketability of the Property or Andromeda's decision to purchase the Property.

3

Case Number: PC-2015-1883
Filed in Providence/Bristol County Superior Court
Submitted: 5/6/2015 3:57:01 PM
Envelope: 183463
Reviewer: Lynn Gaulin

17.     On July 3, 2014, Patrick T. Conley, Gail C. Cahalan-Conley, and Sedona Associates, LLP (collectively "Sedona") sued Mill River in Rhode Island Superior Court, Providence County. The Lawsuit seeks a judgment invalidating the foreclosure sale and seeking money damages. The Lawsuit is still pending.

18.     Sedona is the former owner of the Property.

19.     Mill River held a mortgage on the Property and it conducted the foreclosure sale at which Andromeda purchased the Property.

20.     Sedona alleges that Mill River failed to conduct the foreclosure sale in a commercially reasonable manner and seeks to invalidate Andromeda's title to the Property.

21.     On or about February 6, 2015, Sedona amended its complaint against Mill River to add Andromeda as a defendant ("the Amended Complaint"). A copy of the Amended Complaint is attached as Exhibit B.

22.     The Amended Complaint alleges, among other things, that Mill River conducted the foreclosure sale in a commercially unreasonable manner, that the sales price was below any fair and reasonable re-sale value of the Property, and that Mill River breached its fiduciary duty.

23.     In addition to damages against Mill River and Andromeda, Sedona seeks a declaratory judgment invalidating the foreclosure sale on the Property and invalidating Andromeda's deed to the Property.

24.     On February 18, 2015, upon learning of the Amended Complaint, Andromeda, through Paul Vanasse, notified Attorney Andreoni of the Lawsuit and requested that he notify the individual who would handle the claim.

25.     On February 18, 2015, Attorney Andreoni notified Maria DaSilva by phone and by e-mail of the lawsuit filed against Andromeda.

4

ase Number: PC-2015-0813  Case 1:15-cv-00224-JJM-LDA   Document 1-1   Filed 06/01/15   Page 9 of 62 PageID #: 13
lied in Providence/Bristol County Superior Court
ubmitted: 5/6/2015 3:57:01 PM
nvelope: 183463
eviewer: Lynn Gaulin

26.     Commonwealth responded to Andromeda's claim notice on February 26, 2015. A copy of that letter is attached as Exhibit C.

27.     Commonwealth's letter recognizes "that the issue of invalid foreclosure, raised in your claim tender, does fall within the coverage parameters of the policy."

28.     Commonwealth agreed to "defend the action in relation to the validity of the foreclosure," but it declined to defend Andromeda in relation to Counts I, II, and III of the Amended Complaint. As a result, Andromeda hired counsel of its own to defend it against Counts I, II, and III and to represent its interests with respect to Commonwealth's failure to defend Andromeda against Counts I, II, and II of the Amended Complaint.

29.     In a subsequent letter, dated April 9, 2015, Commonwealth maintained that Counts I, II, and III are not covered counts, but agreed, while reserving its rights, to defend Andromeda on Counts I-IV. A copy of that letter is attached as Exhibit D.

30.     Count I of the Amended Complaint seeks a declaratory judgment invalidating the foreclosure sale.

31.     Count II of the Amended Complaint alleges that Mill River and Andromeda conspired to have Andromeda purchase the Property for $152,000.

32.     Count III of the Amended Complaint alleges breach of fiduciary duty by Mill River and alleges that the foreclosure sale was conducted improperly.

33.     Each of these counts relates to the foreclosure sale, the attendant circumstances, and the validity of the foreclosure sale at which Andromeda purchased the Property.

34.     The Policy contains numerous "Exclusions from Coverage," including: "Defects, liens, encumbrances, adverse claims, or other matters (a) created, suffered, assumed, or agreed to by the Insured Claimant; (b) not Known to the Company, not recorded in the Public Records at

5

ase Number: PC-2015-1803 5-cv-00224-JJM-LDA  Document 1-1  Filed 06/01/15  Page 10 of 62 PageID #: 14
iled in Providence/Bristol County Superior Court
ubmitted: 5/6/2015 3:57:01 PM
nvelope: 183463
eviewer: Lynn Gaulin

Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy; (e) resulting in loss or damage that would not have been sustained if the Insured Claimant had paid value for the Title."

35.     The allegations contained in the Lawsuit implicate policy exclusions because they allege that Andromeda conspired with Mill River to purchase the Property for an unreasonably low price.

36.     Under the Policy, Commonwealth has an obligation to defend Andromeda against all claims alleging matters insured against by the Policy.

37.     Because of the potential application of policy exclusions and in order to avoid its coverage obligations, Commonwealth has an incentive to prove that Andromeda conspired with Mill River to purchase the property in a commercially unreasonable manner for a sale price that was below any commercially reasonable value of the Property.

38.     This incentive creates a conflict of interest between Commonwealth's duty to defend Andromeda and Commonwealth's financial interest to avoid paying claims under the Policy.

39.     On April 14, 2015, counsel for Andromeda sent a letter to Commonwealth, a true copy of which is attached as Exhibit E, requesting that Commonwealth agree to pay costs and fees of independent counsel selected by Andromeda because of the conflict of interest between Andromeda and Commonwealth.

40.     On April 28, 2015, Commonwealth notified Andromeda by letter that it would not pay for independent counsel, stated that it was rescinding its prior agreement to defend

6

ase Number: PC-2015-1883
iled in Providence/Bristol County Superior Court
ubmitted: 5/6/2015 3:57:01 PM
nvelope: 183463
eviewer: Lynn Gaulin

Andromeda on Counts I-IV, and stated that Commonwealth would defend Andromeda only as to Count IV. A copy of that letter is attached as <u>Exhibit F</u>.

41.    To date, Commonwealth refuses to agree to pay for independent counsel.

42.    As a result of Commonwealth's refusal to agree to pay for independent counsel, Andromeda has incurred, and continues to incur attorneys' fees and costs to defend the Lawsuit.

43.    As of April 28, 2015, Commonwealth refuses to defend Andromeda except as to Count IV of the Amended Complaint.

44.    As a result of Commonwealth's refusal to defend the entire action, Andromeda has been forced to obtain separate counsel and defend the Lawsuit itself.

### Count I
### (Declaratory Judgment)

45.    Andromeda hereby re-alleges and incorporates by reference the allegations contained in the foregoing paragraphs as if fully set forth herein.

46.    An actual controversy exists between Andromeda and Commonwealth regarding the coverage provided by the Policy to Andromeda for the risks posed by the Lawsuit.

47.    Pursuant to R.I. Gen. Laws § 9-30-1 et seq., Andromeda respectfully requests a Declaratory Judgment that Commonwealth must provide Andromeda with a defense to the entire Lawsuit, reimburse Andromeda for any costs that it has incurred and may incur defending the Lawsuit, and insure Andromeda against any damages, liabilities, or costs that it has, will, or may face as a result of the Lawsuit.

### Count II
### (Breach of Contract)

48.    Andromeda hereby re-alleges and incorporates by reference the allegations contained in the foregoing paragraphs as if fully set forth herein.

ase Number: PC-2015-1883
iled In Providence/Bristol County Superior Court
ubmitted: 5/6/2015 3:57:01 PM
nvelope: 183463
eviewer: Lynn Gaulin

49.     In exchange for valid consideration from Andromeda, Commonwealth promised in the Policy to insure Andromeda against losses or damages posed by risks such as the Lawsuit.

50.     In exchange for valid consideration from Andromeda, Commonwealth promised in the Policy to defend Andromeda against losses or damages posed by risks such as the Lawsuit.

51.     Commonwealth has breached the terms of the Policy by refusing to insure or defend Andromeda against the risks posed by the Lawsuit.

52.     As a result of Commonwealth's breach of contract, Andromeda has suffered, and continues to suffer, damages that were reasonably foreseeable to Commonwealth.

### Count III
### (Breach of Implied Covenant of Good Faith and Fair Dealing)

53.     Andromeda hereby re-alleges and incorporates by reference the allegations contained in the foregoing paragraphs as if fully set forth herein.

54.     The Policy contained an implied covenant of good faith and fair dealing.

55.     Commonwealth has breached the implied covenant of good faith and fair dealing by improperly and erroneously refusing to defend fully all claims against Andromeda and relating to Andromeda's title to the Property.

56.     As a result of Commonwealth's breach of the implied covenant of good faith and fair dealing, Andromeda has suffered, and continues to suffer, damages that were reasonably foreseeable to Commonwealth.

### Count IV
### (Declaratory Judgment)

57.     Andromeda hereby re-alleges and incorporates by reference the allegations contained in the foregoing paragraphs as if fully set forth herein.

ase Number: PC-2015-1883
iled in Providence/Bristol County Superior Court
ubmitted: 5/6/2015 3:57:01 PM
nvelope: 183463
eviewer: Lynn Gaulin

58.      An actual controversy exists between the Andromeda and Commonwealth
regarding: 1) whether there is a conflict of interest between Andromeda and Commonwealth; and
2) whether Commonwealth is obligated to pay for independent counsel to defend Andromeda in
the Lawsuit.

59.      Pursuant to R.I. Gen. Laws § 9-30-1 et seq., Andromeda respectfully requests a
Declaratory Judgment that Commonwealth is obligated to pay all reasonable costs and attorneys'
fees of independent counsel selected by Andromeda in order to defend the Lawsuit.

60.      Pursuant to R.I. Gen. Laws § 9-30-1 et seq., Andromeda respectfully requests a
Declaratory Judgment that Commonwealth is required to reimburse Andromeda for all of its
reasonable costs and attorneys' fees already incurred in its defense of the Action, including its
fees and costs in maintaining this lawsuit.

## Prayer For Relief

**WHEREFORE,** Plaintiff Andromeda respectfully requests that this Court do the
following:

A.      Enter judgment in Andromeda's favor on all counts of this Complaint;

B.      Issue a Declaratory Judgment that Commonwealth must pay all reasonable costs
and attorneys' fees of independent counsel selected by Andromeda in order to defend the Action;

C.      Issue a Declaratory Judgment that Commonwealth must reimburse Andromeda
for all costs and fees already incurred in its defense of the Action and in maintaining this lawsuit;

D.      Issue a Declaratory Judgment that Commonwealth must provide Andromeda with
a defense to the entire Lawsuit;

E.      Award Andromeda damages against Commonwealth in an amount sufficient to
compensate Andromeda for all of its losses and damages, plus interest; and

9

Case Number: PC-2015-1883
Filed in Providence/Bristol County Superior Court
Submitted: 5/6/2015 3:57:01 PM
Envelope: 183463
Reviewer: Lynn Gaulin

F.  Award Andromeda its costs and attorneys' fees, and other such relief as the Court

deems just, appropriate, and equitable.

## Jury Demand

Andromeda hereby demands a trial by jury of all issues and claims triable of right to a jury.

Andromeda Real Estate Partners, LLC

By its Attorneys,

*/s/ Andrew S. Tugan*
Robert G. Flanders, Jr. (#1785)
Andrew S. Tugan (#9117)
Hinckley, Allen & Snyder LLP
50 Kennedy Plaza, Suite 1500
Providence, RI 02903
Tel: (401) 274-2000
Fax: (401) 277-9600
rflanders@hinckleyallen.com
atugan@hinckleyallen.com

DATED: May 6, 2015

Case Number: PC-2015-1883
Filed in Providence/Bristol County Superior Court
Submitted: 5/6/2015 3:57:01 PM
Envelope: 183463
Reviewer: Lynn Gaulin

# EXHIBIT A

Case Number: PC-2015-1883
Filed in Providence/Bristol County Superior Court
Submitted: 5/6/2015 3:57:01 PM
Envelope: 183463
Reviewer: Lynn

**Commonwealth**
LAND TITLE INSURANCE COMPANY

Policy No.: 20649-1-ANDROMEDA-2014.81306-91541914

# OWNER'S POLICY OF TITLE INSURANCE

Issued by

*Commonwealth Land Title Insurance Company*

**Any notice of claim and any other notice or statement in writing required to be given to the Company under this Policy must be given to the Company at the address shown in Section 18 of the Conditions.**

## COVERED RISKS

SUBJECT TO THE EXCLUSIONS FROM COVERAGE, THE EXCEPTIONS FROM COVERAGE CONTAINED IN SCHEDULE B, AND THE CONDITIONS, COMMONWEALTH LAND TITLE INSURANCE COMPANY, a Nebraska corporation (the "Company") insures, as of Date of Policy and, to the extent stated in Covered Risks 9 and 10, after Date of Policy, against loss or damage, not exceeding the Amount of Insurance, sustained or incurred by the Insured by reason of:

1. Title being vested other than as stated in Schedule A.
2. Any defect in or lien or encumbrance on the Title. This Covered Risk includes but is not limited to insurance against loss from
   (a) A defect in the Title caused by
      (i) forgery, fraud, undue influence, duress, incompetency, incapacity, or impersonation;
      (ii) failure of any person or Entity to have authorized a transfer or conveyance;
      (iii) a document affecting Title not properly created, executed, witnessed, sealed, acknowledged, notarized, or delivered;
      (iv) failure to perform those acts necessary to create a document by electronic means authorized by law;
      (v) a document executed under a falsified, expired, or otherwise invalid power of attorney;
      (vi) a document not properly filed, recorded, or indexed in the Public Records including failure to perform those acts by electronic means authorized by law; or
      (vii) a defective judicial or administrative proceeding.
   (b) The lien of real estate taxes or assessments imposed on the Title by a governmental authority due or payable, but unpaid.
   (c) Any encroachment, encumbrance, violation, variation, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land. The term "encroachment" includes encroachments of existing improvements located on the Land onto adjoining land, and encroachments onto the Land of existing improvements located on adjoining land.
3. Unmarketable Title.
4. No right of access to and from the Land.
5. The violation or enforcement of any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to
   (a) the occupancy, use, or enjoyment of the Land;
   (b) the character, dimensions, or location of any improvement erected on the Land;
   (c) the subdivision of land; or
   (d) environmental protection
   if a notice, describing any part of the Land, is recorded in the Public Records setting forth the violation or intention to enforce, but only to the extent of the violation or enforcement referred to in that notice.
6. An enforcement action based on the exercise of a governmental police power not covered by Covered Risk 5 if a notice of the enforcement action, describing any part of the Land, is recorded in the Public Records, but only to the extent of the enforcement referred to in that notice.
7. The exercise of the rights of eminent domain if a notice of the exercise, describing any part of the Land, is recorded in the Public Records.
8. Any taking by a governmental body that has occurred and is binding on the rights of a purchaser for value without Knowledge.
9. Title being vested other than as stated in Schedule A or being defective
   (a) as a result of the avoidance in whole or in part, or from a court order providing an alternative remedy, of a transfer of all or any part of the title to or any interest in the Land occurring prior to the transaction vesting Title as shown in Schedule A because that prior transfer constituted a fraudulent or preferential transfer under

Form 81306
Reorder 1190-127

Dbl Cover – ALTA Owner's Policy (06/17/06)

Copyright American Land Title Association. All rights reserved. The use of this Form is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association



Case Number: PC-2015-1883
Filed in Providence/Bristol County Superior Court
Submitted: 5/6/2015 3:57:01 PM
Envelope: 183463
Reviewer: Lynn Gaulin

federal bankruptcy, state insolvency, or similar creditors' rights laws; or

    (b) because the Instrument of transfer vesting Title as shown in Schedule A constitutes a preferential transfer under federal bankruptcy, state insolvency, or similar creditors' rights laws by reason of the failure of its recording in the Public Records

        (i) to be timely, or

        (ii) to impart notice of its existence to a purchaser for value or to a judgment or lien creditor.

10. Any defect in or lien or encumbrance on the Title or other matter included in Covered Risks 1 through 9 that has been created or attached or has been filed or recorded in the Public Records subsequent to Date of Policy and prior to the recording of the deed or other instrument of transfer in the Public Records that vests Title as shown in Schedule A.

The Company will also pay the costs, attorneys' fees, and expenses incurred in defense of any matter insured against by this Policy, but only to the extent provided in the Conditions.

**IN WITNESS WHEREOF,** the Company has caused this Policy to be signed with the facsimile signatures of its President and Secretary and sealed as required by its By-Laws.

COMMONWEALTH LAND TITLE INSURANCE COMPANY

_____
Authorized Signatory

(SEAL)

By _____

Attest _____   Secretary

President

20649RI        ANDROMEDA
Glenn J Andreoni Esquire
1028 Park Ave
Woonsocket, RI 02895
Tel: (401) 766-2100
Fax: (401) 766-2828

Form 81306
Reorder 1190-127
Copyright American Land Title Association. All rights reserved. The use of this Form is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association

Dbl Cover – ALTA Owner's Policy (06/17/06)



ase Number: PC-2015-1883
iled in Providence/Bristol County Superior Court
submitted: 5/6/2015 3:57:01 PM
nvelope: 183463
teviewer: Lynn Gaulin

## EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of:

1.  (a) Any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to
    (i)  the occupancy, use, or enjoyment of the Land;
    (ii) the character, dimensions, or location of any improvement erected on the Land;
    (iii) the subdivision of land; or
    (iv) environmental protection;
    or the effect of any violation of these laws, ordinances, or governmental regulations. This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risk 5.
    (b) Any governmental police power. This Exclusion 1(b) does not modify or limit the coverage provided under Covered Risk 6.
2.  Rights of eminent domain. This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8.
3.  Defects, liens, encumbrances, adverse claims, or other matters
    (a) created, suffered, assumed, or agreed to by the Insured Claimant;
    (b) not Known to the Company, not recorded in the Public Records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;
    (c) resulting in no loss or damage to the Insured Claimant;
    (d) attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risk 9 and 10); or
    (e) resulting in loss or damage that would not have been sustained if the Insured Claimant had paid value for the Title.
4.  Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that the transaction vesting the Title as shown in Schedule A, is
    (a) a fraudulent conveyance or fraudulent transfer; or
    (b) a preferential transfer for any reason not stated in Covered Risk 9 of this policy.
5.  Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching between Date of Policy and the date of recording of the deed or other instrument of transfer in the Public Records that vests Title as shown in Schedule A.

## CONDITIONS

### 1. DEFINITION OF TERMS
The following terms when used in this policy mean:

(a) "Amount of Insurance": The amount stated in Schedule A, as may be increased or decreased by endorsement to this policy, increased by Section 8(b), or decreased by Sections 10 and 11 of these Conditions.

(b) "Date of Policy": The date designated as "Date of Policy" in Schedule A.

(c) "Entity": A corporation, partnership, trust, limited liability company, or other similar legal entity.

(d) "Insured": The Insured named in Schedule A.

(i) The term "Insured" also includes
(A) successors to the Title of the Insured by operation of law as distinguished from purchase, including heirs, devisees, survivors, personal representatives, or next of kin;
(B) successors to an Insured by dissolution, merger, consolidation, distribution, or reorganization;
(C) successors to an Insured by its conversion to another kind of Entity;
(D) a grantee of an Insured under a deed delivered without payment of actual valuable consideration conveying the Title

(1) if the stock, shares, memberships, or other equity interests of the grantee are wholly-owned by the named Insured,
(2) if the grantee wholly owns the named Insured,
(3) if the grantee is wholly-owned by an affiliated Entity of the named Insured, provided the affiliated Entity and the named Insured are both wholly-owned by the same person or Entity, or
(4) if the grantee is a trustee or beneficiary of a trust created by a written instrument established by the Insured named in Schedule A for estate planning purposes.

(ii) With regard to (A), (B), (C), and (D) reserving, however, all rights and defenses as to any successor that the Company would have had against any predecessor Insured.

(e) "Insured Claimant": An Insured claiming loss or damage.

(f) "Knowledge" or "Known": Actual knowledge, not constructive knowledge or notice that may be imputed to an Insured by reason of the Public Records or any other records that impart constructive notice of matters

Form 81306
Reorder 1190-127

Dbl Cover -- ALTA Owner's Policy (06/17/06)

Copyright American Land Title Association. All rights reserved. The use of this Form is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association



Case Number: PC-2015-1883
Filed in Providence/Bristol County Superior Court
Submitted: 5/6/2015 3:57:01 PM
Envelope: 183463
Reviewer: Lynn Gaulin

affecting the Title.

(g) "Land": The land described in Schedule A, and affixed improvements that by law constitute real property. The term "Land" does not include any property beyond the lines of the area described in Schedule A, nor any right, title, interest, estate, or easement in abutting streets, roads, avenues, alleys, lanes, ways, or waterways, but this does not modify or limit the extent that a right of access to and from the Land is insured by this policy.

(h) "Mortgage": Mortgage, deed of trust, trust deed, or other security instrument, including one evidenced by electronic means authorized by law.

(i) "Public Records": Records established under state statutes at Date of Policy for the purpose of imparting constructive notice of matters relating to real property to purchasers for value and without Knowledge. With respect to Covered Risk 5(d), "Public Records" shall also include environmental protection liens filed in the records of the clerk of the United States District Court for the district where the Land is located.

(j) "Title": The estate or interest described in Schedule A.

(k) "Unmarketable Title": Title affected by an alleged or apparent matter that would permit a prospective purchaser or lessee of the Title or lender on the Title to be released from the obligation to purchase, lease, or lend if there is a contractual condition requiring the delivery of marketable title.

## 2. CONTINUATION OF INSURANCE

The coverage of this policy shall continue in force as of Date of Policy in favor of an Insured, but only so long as the Insured retains an estate or interest in the Land, or holds an obligation secured by a purchase money Mortgage given by a purchaser from the Insured, or only so long as the Insured shall have liability by reason of warranties in any transfer or conveyance of the Title. This policy shall not continue in force in favor of any purchaser from the Insured of either (i) an estate or interest in the Land, or (ii) an obligation secured by a purchase money Mortgage given to the Insured.

## 3. NOTICE OF CLAIM TO BE GIVEN BY INSURED CLAIMANT

The Insured shall notify the Company promptly in writing (i) in case of any litigation as set forth in Section 5(a) of these Conditions, (ii) in case Knowledge shall come to an Insured hereunder of any claim of title or interest that is adverse to the Title, as insured, and that might cause loss or damage for which the Company may be liable by virtue of this policy, or (iii) if the Title, as insured, is rejected as Unmarketable Title. If the Company is prejudiced by the failure of the Insured Claimant to provide prompt notice, the Company's liability to the Insured Claimant under the policy shall be reduced to the extent of the prejudice.

## 4. PROOF OF LOSS

In the event the Company is unable to determine the amount of loss or damage, the Company may, at its option, require as a condition of payment that the Insured Claimant furnish a signed proof of loss. The proof of loss must describe the defect, lien, encumbrance, or other matter insured against by this policy that constitutes the basis of loss or damage and shall state, to the extent possible, the basis of calculating the amount of the loss or damage.

## 5. DEFENSE AND PROSECUTION OF ACTIONS

(a) Upon written request by the Insured, and subject to the options contained in Section 7 of these Conditions, the Company, at its own cost and without unreasonable delay, shall provide for the defense of an Insured in litigation in which any third party asserts a claim covered by this policy adverse to the Insured. This obligation is limited to only those stated causes of action alleging matters insured against by this policy. The Company shall have the right to select counsel of its choice (subject to the right of the Insured to object for reasonable cause) to represent the Insured as to those stated causes of action. It shall not be liable for and will not pay the fees of any other counsel. The Company will not pay any fees, costs, or expenses incurred by the Insured in the defense of those causes of action that allege matters not insured against by this policy.

(b) The Company shall have the right, in addition to the options contained in Section 7 of these Conditions, at its own cost, to institute and prosecute any action or proceeding or to do any other act that in its opinion may be necessary or desirable to establish the Title, as insured, or to prevent or reduce loss or damage to the Insured. The Company may take any appropriate action under the terms of this policy, whether or not it shall be liable to the Insured. The exercise of these rights shall not be an admission of liability or waiver of any provision of this policy. If the Company exercises its rights under this subsection, it must do so diligently.

(c) Whenever the Company brings an action or asserts a defense as required or permitted by this policy, the Company may pursue the litigation to a final determination by a court of competent jurisdiction, and it expressly reserves the right, in its sole discretion, to appeal any adverse judgment or order.

## 6. DUTY OF INSURED CLAIMANT TO COOPERATE

(a) In all cases where this policy permits or requires the Company to prosecute or provide for the defense of any action or proceeding and any appeals, the Insured shall secure to the Company the right to so prosecute or provide defense in the action or proceeding, including the right to use, at its option, the name of the Insured for this purpose. Whenever requested by the Company, the Insured, at the Company's expense, shall give the Company all reasonable aid (i) in securing

Form 81306
Reorder 1190-127

Dbl Cover -- ALTA Owner's Policy (06/17/06)

Copyright American Land Title Association. All rights reserved. The use of this Form is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association



Case Number: PC-2015-1883
Filed in Providence/Bristol County Superior Court
Submitted: 5/6/2015 3:57:01 PM
Envelope: 183463
Reviewer: Lynn Gaulin

evidence, obtaining witnesses, prosecuting or defending the action or proceeding, or effecting settlement, and (ii) in any other lawful act that in the opinion of the Company may be necessary or desirable to establish the Title or any other matter as insured. If the Company is prejudiced by the failure of the Insured to furnish the required cooperation, the Company's obligations to the Insured under the policy shall terminate, including any liability or obligation to defend, prosecute, or continue any litigation, with regard to the matter or matters requiring such cooperation.

(b) The Company may reasonably require the Insured Claimant to submit to examination under oath by any authorized representative of the Company and to produce for examination, inspection, and copying, at such reasonable times and places as may be designated by the authorized representative of the Company, all records, in whatever medium maintained, including books, ledgers, checks, memoranda, correspondence, reports, e-mails, disks, tapes, and videos whether bearing a date before or after Date of Policy, that reasonably pertain to the loss or damage. Further, if requested by any authorized representative of the Company, the Insured Claimant shall grant its permission, in writing, for any authorized representative of the Company to examine, inspect, and copy all of these records in the custody or control of a third party that reasonably pertain to the loss or damage. All information designated as confidential by the Insured Claimant provided to the Company pursuant to this Section shall not be disclosed to others unless, in the reasonable judgment of the Company, it is necessary in the administration of the claim. Failure of the Insured Claimant to submit for examination under oath, produce any reasonably requested information, or grant permission to secure reasonably necessary information from third parties as required in this subsection, unless prohibited by law or governmental regulation, shall terminate any liability of the Company under this policy as to that claim.

## 7. OPTIONS TO PAY OR OTHERWISE SETTLE CLAIMS; TERMINATION OF LIABILITY

In case of a claim under this policy, the Company shall have the following additional options:

(a) To Pay or Tender Payment of the Amount of Insurance.

To pay or tender payment of the Amount of Insurance under this policy together with any costs, attorneys' fees, and expenses incurred by the Insured Claimant that were authorized by the Company up to the time of payment or tender of payment and that the Company is obligated to pay.

Upon the exercise by the Company of this option, all liability and obligations of the Company to the Insured under this policy, other than to make the payment required in this subsection, shall terminate, including any

liability or obligation to defend, prosecute, or continue any litigation.

(b) To Pay or Otherwise Settle With Parties Other Than the Insured or With the Insured Claimant.

(i) To pay or otherwise settle with other parties for or in the name of an Insured Claimant any claim insured against under this policy. In addition, the Company will pay any costs, attorneys' fees, and expenses incurred by the Insured Claimant that were authorized by the Company up to the time of payment and that the Company is obligated to pay; or

(ii) To pay or otherwise settle with the Insured Claimant the loss or damage provided for under this policy, together with any costs, attorneys' fees, and expenses incurred by the Insured Claimant that were authorized by the Company up to the time of payment and that the Company is obligated to pay.

Upon the exercise by the Company of either of the options provided for in subsections (b)(i) or (ii), the Company's obligations to the Insured under this policy for the claimed loss or damage, other than the payments required to be made, shall terminate, including any liability or obligation to defend, prosecute, or continue any litigation.

## 8. DETERMINATION AND EXTENT OF LIABILITY

This policy is a contract of indemnity against actual monetary loss or damage sustained or incurred by the Insured Claimant who has suffered loss or damage by reason of matters insured against by this policy.

(a) The extent of liability of the Company for loss or damage under this policy shall not exceed the lesser of

(i) the Amount of Insurance; or

(ii) the difference between the value of the Title as insured and the value of the Title subject to the risk insured against by this policy.

(b) If the Company pursues its rights under Section 5 of these Conditions and is unsuccessful in establishing the Title, as insured,

(i) the Amount of Insurance shall be increased by 10%, and

(ii) the Insured Claimant shall have the right to have the loss or damage determined either as of the date the claim was made by the Insured Claimant or as of the date it is settled and paid.

(c) In addition to the extent of liability under (a) and (b), the Company will also pay those costs, attorneys' fees, and expenses incurred in accordance with Sections 5 and 7 of these Conditions.

## 9. LIMITATION OF LIABILITY

(a) If the Company establishes the Title, or removes the alleged defect, lien, or encumbrance, or cures the lack of a right of access to or from the Land, or cures the claim of Unmarketable Title, all as insured, in a reasonably diligent manner by any method, including

Form 81306
Reorder 1190-127

Dbl Cover -- ALTA Owner's Policy (06/17/06)

Copyright American Land Title Association. All rights reserved. The use of this Form is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association




ase Number: PC-2015-1883
iled in Providence/Bristol County Superior Court
ubmitted: 5/6/2015 3:57:01 PM
nvelope: 183463
eviewer: Lynn Gaulin

litigation and the completion of any appeals, it shall have fully performed its obligations with respect to that matter and shall not be liable for any loss or damage caused to the Insured.

(b) In the event of any litigation, including litigation by the Company or with the Company's consent, the Company shall have no liability for loss or damage until there has been a final determination by a court of competent jurisdiction, and disposition of all appeals, adverse to the Title, as insured.

(c) The Company shall not be liable for loss or damage to the Insured for liability voluntarily assumed by the Insured in settling any claim or suit without the prior written consent of the Company.

## 10. REDUCTION OF INSURANCE; REDUCTION OR TERMINATION OF LIABILITY

All payments under this policy, except payments made for costs, attorneys' fees, and expenses, shall reduce the Amount of Insurance by the amount of the payment.

## 11. LIABILITY NONCUMULATIVE

The Amount of Insurance shall be reduced by any amount the Company pays under any policy insuring a Mortgage to which exception is taken in Schedule B or to which the Insured has agreed, assumed, or taken subject, or which is executed by an Insured after Date of Policy and which is a charge or lien on the Title, and the amount so paid shall be deemed a payment to the Insured under this policy.

## 12. PAYMENT OF LOSS

When liability and the extent of loss or damage have been definitely fixed in accordance with these Conditions, the payment shall be made within 30 days.

## 13. RIGHTS OF RECOVERY UPON PAYMENT OR SETTLEMENT

(a) Whenever the Company shall have settled and paid a claim under this policy, it shall be subrogated and entitled to the rights of the Insured Claimant in the Title and all other rights and remedies in respect to the claim that the Insured Claimant has against any person or property, to the extent of the amount of any loss, costs, attorneys' fees, and expenses paid by the Company. If requested by the Company, the Insured Claimant shall execute documents to evidence the transfer to the Company of these rights and remedies. The Insured Claimant shall permit the Company to sue, compromise, or settle in the name of the Insured Claimant and to use the name of the Insured Claimant in any transaction or litigation involving these rights and remedies.

If a payment on account of a claim does not fully cover the loss of the Insured Claimant, the Company shall defer the exercise of its right to recover until after the Insured Claimant shall have recovered its loss.

(b) The Company's right of subrogation

includes the rights of the Insured to indemnities, guaranties, other policies of insurance, or bonds, notwithstanding any terms or conditions contained in those instruments that address subrogation rights.

## 14. ARBITRATION

Either the Company or the Insured may demand that the claim or controversy shall be submitted to arbitration pursuant to the Title Insurance Arbitration Rules of the American Land Title Association ("Rules"). Except as provided in the Rules, there shall be no joinder or consolidation with claims or controversies of other persons. Arbitrable matters may include, but are not limited to, any controversy or claim between the Company and the Insured arising out of or relating to this policy, any service in connection with its issuance or the breach of a policy provision, or to any other controversy or claim arising out of the transaction giving rise to this policy. All arbitrable matters when the Amount of Insurance is $2,000,000 or less shall be arbitrated at the option of either the Company or the Insured.

All arbitrable matters when the Amount of Insurance is in excess of $2,000,000 shall be arbitrated only when agreed to by both the Company and the Insured.

Arbitration pursuant to this policy and under the Rules shall be binding upon the parties. Judgment upon the award rendered by the Arbitrator(s) may be entered in any court of competent jurisdiction.

## 15. LIABILITY LIMITED TO THIS POLICY; POLICY ENTIRE CONTRACT

(a) This policy together with all endorsements, if any, attached to it by the Company is the entire policy and contract between the Insured and the Company. In interpreting any provision of this policy, this policy shall be construed as a whole.

(b) Any claim of loss or damage that arises out of the status of the Title or by any action asserting such claim shall be restricted to this policy.

(c) Any amendment of or endorsement to this policy must be in writing and authenticated by an authorized person, or expressly incorporated by Schedule A of this policy.

(d) Each endorsement to this policy issued at any time is made a part of this policy and is subject to all of its terms and provisions. Except as the endorsement expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsement, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance.

## 16. SEVERABILITY

In the event any provision of this policy, in whole or in part, is held invalid or unenforceable under applicable law, the policy shall be deemed not to include that provision or such part held to be invalid, but all other provisions shall remain in full force and effect.

Form 81306
Reorder 1190-127
Copyright American Land Title Association. All rights reserved. The use of this Form is restricted to ALTA licensees and ALTA
members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association

Obl Cover – ALTA Owner's Policy (06/17/06)



ase Number: PC-2015-1883
iled in Providence/Bristol County Superior Court
ubmitted: 5/6/2015 3:57:01 PM
nvelope: 183463
eviewer: Lynn Gaulin

## 17. CHOICE OF LAW; FORUM

(a)    Choice of Law:   The Insured acknowledges the Company has underwritten the risks covered by this policy and determined the premium charged therefor in reliance upon the law affecting interests in real property and applicable to the interpretation, rights, remedies, or enforcement of policies of title insurance of the jurisdiction where the Land is located.

Therefore, the court or an arbitrator shall apply the law of the jurisdiction where the Land is located to determine the validity of claims against the Title that are adverse to the Insured and to interpret and enforce the terms of this policy. In neither case shall the court or arbitrator apply its conflicts of law principles to determine the applicable law.

(b)    Choice of Forum:   Any litigation or other proceeding brought by the Insured against the Company must be filed only in a state or federal court within the United States of America or its territories having appropriate jurisdiction.

## 18. NOTICES, WHERE SENT

Any notice of claim and any other notice or statement in writing required to be given to the Company under this Policy must be given to the Company at:   P.O. Box 45023, Jacksonville, FL 32232-5023.

Form 81306
Reorder 1190-127

Dbl Cover – ALTA Owner's Policy (06/17/06)

Copyright American Land Title Association. All rights reserved. The use of this Form is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association



ase Number: PC-2015-1883
lied In Providence/Bristol County Superior Court
ubmitted: 5/6/2015 3:57:01 PM
nvelope: 183463
eviewer: Lynn Gaulin

# COMMONWEALTH LAND TITLE INSURANCE CO.

## TITLE POLICY

LOAN #:                                    SCHEDULE A

| POLICY #: | DATE OF POLICY: | AMOUNT OF INSURANCE: |
|---|---|---|
| Owner's:      81306-91541914<br>Loan:          N/A<br>TIME: Owner's: 12:29 PM<br>TIME: Loan: | 07/03/14 | $ 152,000.00 |

1. Name of Insured:

   (a) **Owner's Policy:** ANDROMEDA REAL ESTATE PARTNERS, LLC

   (b) **Loan Policy:** N/A

2. The estate or interest in the land described herein which is Fee Simple, and is at Date of Policy vested in:

   ### ANDROMEDA REAL ESTATE PARTNERS, LLC

3. The Mortgage, herein referred to as the insured mortgage with respect to the Loan Policy, and any assignments thereof, are described as follows: N/A

4. The land referred to in this policy and is identified in accordance with Exhibit "A" attached hereto with a property address of: **29 WHIPPLE AVENUE, SMITHFIELD, RI 02917 AP23,LOT71&AP24,LOTS66&67.** The property address and assessor's information is not insured and is incorporated for the Company's indexing purposes only.

COUNTERSIGNED

_____
LAW OFFICES OF GLENN J. ANDREONI, INC.
AGENT FOR:
COMMONWEALTH LAND TITLE INSURANCE CO.

ALTA TITLE POLICY SCHEDULE A

This Policy Valid Only if Schedule B, Face Page and Cover Page are attached

ase Number: PC-2015-1883
led in Providence/Bristol County Superior Court
ubmitted: 5/6/2015 3:57:01 PM
nvelope: 183463
eviewer: Lynn Gaulin

# COMMONWEALTH LAND TITLE INSURANCE CO.
## SCHEDULE B

OWNER'S POLICY#: 81306-91541914
LOAN POLICY #: N/A
LENDER: N/A
TITLE VESTED IN: ANDROMEDA REAL ESTATE PARTNERS, LLC

This policy does not insure against loss or damages (and the company will not pay costs, attorneys' fees or expenses) by reason of the following:

1. Any lien, or right to a lien, for service, labor, or materials heretofore or hereafter furnished, imposed by law and not shown by the public records.
2. Rights or claims of parties in possession.
3. Any encroachments, easements, measurements, variations in area or content, conflicts in boundary lines, party walls or other facts which a current accurate survey of the premises would show.
4. The mortgage, if any, referred to in Item 3 of Schedule A. (This exception does NOT apply to the Loan Policy.)
5. Liens for taxes and assessments which become due and payable subsequent to the date of this policy.
6. Riparian rights of others in and to the waters of any stream and/or rivers lying along and/or crossing the land, and any right, title and interest of others in and to any portion of the land consisting of filled tidal lands.
7. IF THE INSURED PREMISES IS:
   a. A Rhode Island CONDOMINIUM UNIT:
      Terms and provisions of the Condominium Ownership Act, R.I.G.L. § 34-36-1' et seq., as amended; the Rhode Island Condominium Act, R.I.G.L. § 34-36.1.01 et seq., as amended; and the terms and provisions of the Declaration and by-Laws of the Condominium to which the land has been submitted, as the same may from time to time be amended.
   b. A Massachusetts CONDOMINIUM UNIT:
      Covenants, conditions, restrictions, reservations, easements, liens for assessments, options, powers of attorney, and limitations on title, created by the Commonwealth of Massachusetts, General Laws, Chapter 183A or set forth in the Master Deed, as amended of record, in the related Declaration of Trust and by-laws, in any instrument creating the estate or interest insured by this policy and in any of the instruments aforesaid.
8. IF THE LAND IS SUBJECT TO ANY RECORDED COVENANTS, CONDITIONS, AND/OR RESTRICTIONS: Any provision in any recorded covenants, conditions and restrictions which indicate any preference, limitation or discrimination based on race, color, religion, sex, handicap, familial status or national origin are hereby deleted.
9. Any unrecorded leases and/or month-to-month tenancies, if applicable.
10. Covenants, conditions, easements and restrictions, if any, of record.
11. Any obligations incidental to the membership in the Woonasquatucket Reservoir Company, Inc. as evidenced by Certificate of Membership dated July 13, 1964, and recorded in said Records in Book 27, Page 494.
12. Flowage rights, reservations and easements referred to in the two deeds hereinbefore referred to, if deemed to apply.
13. Zoning Decision at Book 521, Page 17.
14. Notice of Wetlands Violation from RI DEM, if deemed to apply.

___ For Additional Exceptions, See Schedule B Addendum Attached.
General exceptions numbered 1,2,3,4 are hereby omitted from the Loan Policy.  NO EXCEPTIONS are deleted from the Owner's Policy.
The following coverage, as checked, is hereby given with respect to the policy to the same extent as if the endorsement checked was attached to said policy:
X SECONDARY MORTGAGE MARKET ENDORSEMENT
___ ALTA ENDORSEMENT 4.1.06-Condominium
___ ALTA ENDORSEMENT 6-06-Variable Rate Mortgage
___ ALTA ENDORSEMENT 6.2-06 –Variable Rate Mortgage-Negative Amortization
X ALTA ENDORSEMENT 8.1-Environmental Lien.
___ ALTA ENDORSEMENT 5.1-06-Planned Unit Development

This endorsement is made part of the policy or commitment and is subject to all the terms and provisions thereof and of any prior endorsements thereto. Except to the extent expressly stated, it neither modifies any of the terms and provisions of the policy or commitment and prior endorsements, if any, nor does it extend the effective date of the policy or commitment and prior endorsements or increase the face amount thereof.

_____ Dated:
LAW OFFICES OF GLENN J. ANDREONI, INC.
AGENT FOR COMMONWEALTH LAND TITLE INSURANCE CO.
ALTA TITLE POLICY SCHEDULE B
FILE NAME: ANDROMEDA YEAR: 2014

ase Number: PC-2015-1883
iled in Providence/Bristol County Superior Court
ubmitted: 5/6/2015 3:57:01 PM
nvelope: 183463
eviewer: Lynn Gaulin

### "EXHIBIT A"

That parcel of land with all the buildings and improvements thereon, situated in the Village of Georgiaville, Town of Smithfield, and State of Rhode Island, bounding:

NORTHEASTERLY on Whipple Avenue,

EASTERLY on the Woonasquatucket River,

SOUTHEASTERLY on land now or lately of Ida M. Mercier,

SOUTHWESTERLY on the former location of the New York, New Haven and Hartford Railroad, and

NORTHWESTERLY on Higgins Street,

Said parcel comprises Lot 41 (forty-one) on that plat entitled "Plan in Sub-Division Bernon Mill Property of Manville-Jenckes Corporation Smithfield, R.I. April 1935 Charles P. Parker Civil Engineer Woonsocket, R.I." which plat is recorded with the Records of Land Evidence in said Town of Smithfield on Plat Card 65, and a parcel next southerly thereof.

Together with the rights and privileges incidental to the membership in the Woonasquatucket Reservoir Company, Inc. as evidenced by Certificate of Membership dated July 13, 1964, and recorded in said Records in Book 27, Page 494.

ase Number: PC-2015-1883
led in Providence/Bristol County Superior Court
ubmitted: 5/6/2015 3:57:01 PM
nvelope: 183463
eviewer: Lynn Gaulin

## FIDELITY NATIONAL FINANCIAL
### PRIVACY NOTICE

Fidelity National Financial, Inc. and its majority-owned subsidiary companies providing real estate- and loan-related services (collectively, "FNF", "our" or "we") respect and are committed to protecting your privacy. This Privacy Notice lets you know how and for what purposes your Personal Information (as defined herein) is being collected, processed and used by FNF. We pledge that we will take reasonable steps to ensure that your Personal Information will only be used in ways that are in compliance with this Privacy Notice.

This Privacy Notice is only in effect for any generic information and Personal Information collected and/or owned by FNF, including collection through any FNF website and any online features, services and/or programs offered by FNF (collectively, the "Website"). This Privacy Notice is not applicable to any other web pages, mobile applications, social media sites, email lists, generic information or Personal Information collected and/or owned by any entity other than FNF.

### Collection and Use of Information

The types of personal information FNF collects may include, among other things (collectively, "Personal Information"): (1) contact information (e.g., name, address, phone number, email address); (2) demographic information (e.g., date of birth, gender marital status); (3) Internet protocol (or IP) address or device ID/UDID; (4) social security number (SSN), student ID (SIN), driver's license, passport, and other government ID numbers; (5) financial account information, and (6) information related to offenses or criminal convictions.

In the course of our business, we may collect Personal Information about you from the following sources:

o   Applications or other forms we receive from you or your authorized representative;
o   Information we receive from you through the Website;
o . Information about your transactions with or services performed by us, our affiliates, or others; and
o   From consumer or other reporting agencies and public records maintained by governmental entities that we either obtain directly from those entities, or from our affiliates or others.

Information collected by FNF is used for three main purposes·

o   To provide products and services to you or one or more third party service providers (collectively, "Third Parties") who are obtaining services on your behalf or in connection with a transaction involving you.
o   To improve our products and services that we perform for you or for Third Parties.
o   To communicate with you and to inform you about FNF's, FNF's affiliates and third parties' products and services.

### Additional Ways Information is Collected Through the Website

**Browser Log Files.** Our servers automatically log each visitor to the Website and collect and record certain information about each visitor. This information may include IP address, browser language, browser type, operating system, domain names, browsing history (including time spent at a domain, time and date of your visit), referring/exit web pages and URLs, and number of clicks. The domain name and IP address reveal nothing personal about the user other than the IP address from which the user has accessed the Website.

**Cookies.** From time to time, FNF or other third parties may send a "cookie" to your computer. A cookie is a small piece of data that is sent to your Internet browser from a web server and stored on your computer's hard drive and that can be re-sent to the serving website on subsequent visits A cookie, by itself, cannot read other data from your hard disk or read other cookie files already on your computer. A cookie, by itself, does not damage your system. We, our advertisers and other third parties may use cookies to identify and keep track of, among other things, those areas of the Website and third party websites that you have visited in the past in order to enhance your next visit to the Website. You can choose whether or not to accept cookies by changing the settings of your Internet browser, but some functionality of the Website may be impaired or not function as intended. See the Third Party Opt Out section below.

**Web Beacons.** Some of our web pages and electronic communications may contain images, which may or may not be visible to you, known as Web Beacons (sometimes referred to as "clear gifs"). Web Beacons collect only limited information that includes a cookie number; time and date of a page view; and a description of the page on which the Web Beacon resides. We may also carry Web Beacons placed by third party advertisers. These Web Beacons do not carry any Personal Information and are only used to track usage of the Website and activities associated with the Website. See the Third Party Opt Out section below.

**Unique Identifier.** We may assign you a unique internal identifier to help keep track of your future visits. We may use this information to gather aggregate demographic information about our visitors, and we may use it to personalize the information you see on the Website and some of the electronic communications you receive from us. We keep this information for our internal use, and this information is not shared with others.

**Third Party Opt Out.** Although we do not presently, in the future we may allow third-party companies to serve advertisements and/or collect certain anonymous information when you visit the Website. These companies may use non-personally identifiable information (e.g., click stream information, browser type, time and date, subject of advertisements clicked or scrolled over) during your visits to the Website in order to provide advertisements about products and services likely to be of greater interest to you. These companies typically use a cookie or third party Web Beacon to collect this information, as further described above. Through these technologies, the third party may have access to and use non-personalized information about your online usage activity.

You can opt-out of online behavioral services through any one of the ways described below. After you opt-out, you may continue to receive advertisements, but those advertisements will no longer be as relevant to you.

o   You can opt-out via the Network Advertising Initiative industry opt-out at http://www.networkadvertising.org/.
o   You can opt-out via the Consumer Choice Page at www.aboutads.info.
o   For those in the U.K., you can opt-out via the IAB UK's industry opt-out at www.youronlinechoices.com.
o   You can configure your web browser (Chrome, Firefox, Internet Explorer, Safari, etc.) to delete and/or control the use of cookies.

More information can be found in the Help system of your browser. Note: If you opt-out as described above, you should not delete your cookies. If you delete your cookies, you will need to opt-out again.

ase Number: PC-2015-1883
iled in Providence/Bristol County Superior Court
ubmitted: 5/6/2015 3:57:01 PM
nvelope: 183463
eviewer: Lynn Gaulin

## When Information Is Disclosed By FNF

We may provide your Personal Information (excluding information we receive from consumer or other credit reporting agencies) to various individuals and companies, as permitted by law, without obtaining your prior authorization. Such laws do not allow consumers to restrict these disclosures. Disclosures may include, without limitation, the following:

- To agents, brokers, representatives, or others to provide you with services you have requested, and to enable us to detect or prevent criminal activity, fraud, material misrepresentation, or nondisclosure in connection with an insurance transaction;
- To third-party contractors or service providers who provide services or perform marketing services or other functions on our behalf;
- To law enforcement or other governmental authority in connection with an investigation, or civil or criminal subpoenas or court orders; and/or
- To lenders, lien holders, judgment creditors, or other parties claiming an encumbrance or an interest in title whose claim or interest must be determined, settled, paid or released prior to a title or escrow closing.

In addition to the other times when we might disclose information about you, we might also disclose information when required by law or in the good-faith belief that such disclosure is necessary to: (1) comply with a legal process or applicable laws; (2) enforce this Privacy Notice; (3) respond to claims that any materials, documents, images, graphics, logos, designs, audio, video and any other information provided by you violates the rights of third parties; or (4) protect the rights, property or personal safety of FNF, its users or the public.

We maintain reasonable safeguards to keep the Personal Information that is disclosed to us secure. We provide Personal Information and non-Personal Information to our subsidiaries, affiliated companies, and other businesses or persons for the purposes of processing such information on our behalf and promoting the services of our trusted business partners, some or all of which may store your information on servers outside of the United States. We require that these parties agree to process such information in compliance with our Privacy Notice or in a similar, industry-standard manner, and we use reasonable efforts to limit their use of such information and to use other appropriate confidentiality and security measures. The use of your information by one of our trusted business partners may be subject to that party's own Privacy Notice. We do not, however, disclose information we collect from consumer or credit reporting agencies with our affiliates or others without your consent, in conformity with applicable law, unless such disclosure is otherwise permitted by law.

We also reserve the right to disclose Personal Information and/or non-Personal Information to take precautions against liability, investigate and defend against any third-party claims or allegations, assist government enforcement agencies, protect the security or integrity of the Website, and protect the rights, property, or personal safety of FNF, our users or others.

We reserve the right to transfer your Personal Information, as well as any other information, in connection with the sale or other disposition of all or part of the FNF business and/or assets. We also cannot make any representations regarding the use or transfer of your Personal Information or other information that we may have in the event of our bankruptcy, reorganization, insolvency, receivership or an assignment for the benefit of creditors, and you expressly agree and consent to the use and/or transfer of your Personal Information or other information in connection with a sale or transfer of some or all of our assets in any of the above described proceedings. Furthermore, we cannot and will not be responsible for any breach of security by any third parties or for any actions of any third parties that receive any of the information that is disclosed to us.

## Information from Children

We do not collect Personal Information from any person that we know to be under the age of thirteen (13). Specifically, the Website is not intended or designed to attract children under the age of thirteen (13). You affirm that you are either more than 18 years of age, or an emancipated minor, or possess legal parental or guardian consent, and are fully able and competent to enter into the terms, conditions, obligations, affirmations, representations, and warranties set forth in this Privacy Notice, and to abide by and comply with this Privacy Notice. In any case, you affirm that you are over the age of 13, as THE WEBSITE IS NOT INTENDED FOR CHILDREN UNDER 13 THAT ARE UNACCOMPANIED BY HIS OR HER PARENT OR LEGAL GUARDIAN.

Parents should be aware that FNF's Privacy Notice will govern our use of Personal Information, but also that information that is voluntarily given by children – or others – in email exchanges, bulletin boards or the like may be used by other parties to generate unsolicited communications FNF encourages all parents to instruct their children in the safe and responsible use of their Personal Information while using the Internet.

### Privacy Outside the Website

The Website may contain various links to other websites, including links to various third party service providers. FNF is not and cannot be responsible for the privacy practices or the content of any of those other websites. Other than under agreements with certain reputable organizations and companies, and except for third party service providers whose services either we use or you voluntarily elect to utilize, we do not share any of the Personal Information that you provide to us with any of the websites to which the Website links, although we may share aggregate, non-Personal Information with those other third parties. Please check with those websites in order to determine their privacy policies and your rights under them.

### European Union Users

If you are a citizen of the European Union, please note that we may transfer your Personal Information outside the European Union for use for any of the purposes described in this Privacy Notice. By providing FNF with your Personal Information, you consent to both our collection and such transfer of your Personal Information in accordance with this Privacy Notice.

### Choices with Your Personal Information

Whether you submit Personal Information to FNF is entirely up to you. You may decide not to submit Personal Information, in which case FNF may not be able to provide certain services or products to you.

You may choose to prevent FNF from disclosing or using your Personal Information under certain circumstances ("opt out"). You may opt out of any disclosure or use of your Personal Information for purposes that are incompatible with the purpose(s) for which it was originally collected or for which you subsequently gave authorization by notifying us by one of the methods at the end of this Privacy Notice. Furthermore, even where your Personal Information is to be disclosed and used in accordance with the stated purposes in this Privacy Notice, you may elect to opt out of such disclosure to and use by a third party that is not acting as an agent of FNF. As described above, there are some uses from which you cannot opt-out.

Please note that opting out of the disclosure and use of your Personal Information as a prospective employee may prevent you from being hired as an employee by FNF to the extent that provision of your Personal Information is required to apply for an open position.

ase Number: PC-2015-1883
iled in Providence/Bristol County Superior Court
ubmitted: 5/6/2015 3:57:01 PM
nvelope: 183463
eviewer: Lynn Gaulin

If FNF collects Personal Information from you, such information will not be disclosed or used by FNF for purposes that are incompatible with the purpose(s) for which it was originally collected or for which you subsequently gave authorization unless you affirmatively consent to such disclosure and use.

You may opt out of online behavioral advertising by following the instructions set forth above under the above section "Additional Ways That Information Is Collected Through the Website," subsection "Third Party Opt Out."

<u>Access and Correction</u>

To access your Personal Information in the possession of FNF and correct inaccuracies of that information in our records, please contact us in the manner specified at the end of this Privacy Notice. We ask individuals to identify themselves and the information requested to be accessed and amended before processing such requests, and we may decline to process requests in limited circumstances as permitted by applicable privacy legislation.

<u>Your California Privacy Rights</u>

Under California's "Shine the Light" law, California residents who provide certain personally identifiable information in connection with obtaining products or services for personal, family or household use are entitled to request and obtain from us once a calendar year information about the customer information we shared, if any, with other businesses for their own direct marketing uses. If applicable, this information would include the categories of customer information and the names and addresses of those businesses with which we shared customer information for the immediately prior calendar year (e.g., requests made in 2013 will receive information regarding 2012 sharing activities).

To obtain this information on behalf of FNP, please send an email message to privacy@fnf.com with "Request for California Privacy Information" in the subject line and in the body of your message. We will provide the requested information to you at your email address in response.

Please be aware that not all information sharing is covered by the "Shine the Light" requirements and only information on covered sharing will be included in our response.

Additionally, because we may collect your Personal Information from time to time, California's Online Privacy Protection Act requires us to disclose how we respond to "do not track" requests and other similar mechanisms. Currently, our policy is that we do not recognize "do not track" requests from Internet browsers and similar devices.

<u>Your Consent to This Privacy Notice</u>

By submitting Personal Information to FNF, you consent to the collection and use of information by us as specified above or as we otherwise see fit, in compliance with this Privacy Notice, unless you inform us otherwise by means of the procedure identified below. If we decide to change this Privacy Notice, we will make an effort to post those changes on the Website. Each time we collect information from you following any amendment of this Privacy Notice will signify your assent to and acceptance of its revised terms for all previously collected information and information collected from you in the future. We may use comments, information or feedback that you may submit in any manner that we may choose without notice or compensation to you.

If you have additional questions or comments, please let us know by sending your comments or requests to:

Fidelity National Financial, Inc.
601 Riverside Avenue
Jacksonville, Florida 32204
Attn: Chief Privacy Officer
(888) 934-3354
privacy@fnf.com

Copyright © 2014, Fidelity National Financial, Inc. All Rights Reserved.

EFFECTIVE AS OF: JANUARY 24, 2014

LAST UPDATED: JANUARY 24, 2014

ase Number: PC-2015-1883
led in Providence/Bristol County Superior Court
ubmitted: 5/6/2015 3:57:01 PM
nvelope: 183463
eviewer: Lynn Gaulin

# EXHIBIT B

ase Number: PC-2015-1883
lled in Providence/Bristol County Superior Court
ubmitted: 5/6/2015 3:57:01 PM
nvelope: 183463
eviewer: Lynn Gaulin
     Case Number: PC-2014-3344
     Filed in Providence/Bristol County Superior Court
     Submitted: 2/6/2015 9:20:50 AM
     Envelope: 79494
     Reviewer: Alexa Goneconte

STATE OF RHODE ISLAND                         SUPERIOR COURT
PROVIDENCE, SC

PATRICK T. CONLEY, GAIL C.                :
CAHALAN-CONLEY AND SEDONA                  :
ASSOCIATES, LLP                            :
             *Plaintiffs*                  :        C.A. No.: 14-3344
                                           :
v.                                         :
                                           :
MILL RIVER LENDING TRUST; and              :
ANDROMEDA REAL ESTATE                      :
PARTNERS, LLC                              :
             *Defendants*

## AMENDED COMPLAINT

NOW COME, the Plaintiffs, Patrick T. Conley, Gail C. Cahalan-Conley and Sedona

Associates, LLP (hereinafter, the "Plaintiffs") and hereby file this action against the Defendant,

Mill River Lending Trust (hereinafter, "Mill River") and Defendant, Andromeda Real Estate

Partners, LLC (hereinafter, "Andromeda Real Estate"), requesting that this Court issue a

Declaratory Judgment declaring that the foreclosure sale of certain property owned by Plaintiff,

Sedona Associates, LLP (hereinafter, "Sedona") was invalid as Mill River failed to follow the

proper protocol and procedure for a foreclosure sale and also failed to properly perform due-

diligence in conducting said sale. As a result of the Defendants' actions, Sedona's property was

sold for far below any commercially reasonable value, which has resulted in significant harm to

the Plaintiffs.

Plaintiffs further maintain that Mill River conspired with the buyer of the property,

Andromeda Real Estate, to purchase the property at foreclosure sale for far below a

commercially reasonable value of the property. Plaintiffs further assert that Mill River has

breached its fiduciary duty and obligations to Plaintiffs as a lender.

ase Number: PC-2015-1883
led in Providence/Bristol County Superior Court
ubmitted: 5/6/2015 3:57:01 PM
nvelope: 183463
eviewer: Lynn Gaulin
    Case Number: PC-2014-3344
    Filed in Providence/Bristol County Superior Court
    Submitted: 2/8/2015 9:20:50 AM
    Envelope: 79494
    Reviewer: Alexa Geneconte

### *Parties*

1.      Plaintiff, Patrick T. Conley, is a Rhode Island resident with a mailing address of One Bristol Point Road, Bristol, RI 02809.

2.      Plaintiff, Gail C. Cahallan-Conley, is a Rhode Island resident with a mailing address of One Bristol Point Road, Bristol, RI 02809.

3.      Plaintiff, Sedona Associates, LLP, is a Rhode Island limited liability partnership with a mailing address of 1445 Wampanoag Trial, Suite 203, East Providence, RI 02915.

4.      Defendant, Mill River Lending Trust is a Rhode Island corporation with a mailing and business address of 113 Ripley Road, c/o Erik Potter, Cohasset, MA 02025.

5.      Defendant, Andromeda Real Estate Partners, LLC, is a Rhode Island limited liability company with a mailing and business address of 1849 Old Louisquisset Pike, Lincoln, RI 02865.

6.      Mill River and Andromeda Real Estate will be referred to in their individual capacities or collectively referred to as the "Defendants" where appropriate.

### *Jurisdiction*

7.      This Court has jurisdiction over this matter pursuant to R.I. Gen. Laws §§ 8-2-13, 8-2-14 and § 9-30-1, *et. seq.*, the Uniform Declaratory Judgments Act.

### *General Allegations*

8.      Sedona is the owner of real estate located in the Town of Smithfield at 29 Whipple Avenue, Smithfield, RI, which is comprised of 10.14 acres (hereinafter, the "Property").

9.      Sedona obtained approvals from the Town of Smithfield to construct a 42 unit senior housing development at the Property. Said approvals were confirmed by a recorded Court Order.

2

ase Number: PC-2015-1883
iled in Providence/Bristol County Superior Court
ubmitted: 5/6/2015 3:57:01 PM
nvelope: 183463
eviewer: Lynn Gaulin
Case Number: PC-2014-3344
Filed in Providence/Bristol County Superior Court
Submitted: 2/6/2015 9:20:50 AM
Envelope: 79494
Reviewer: Alexa Goneconte

10.    The Property currently has and maintains the approvals for the 42 unit senior housing complex.

11.    On or about July 13, 2009, Sedona executed a Mortgage Deed and an Assignment of Leases and Rents with Mill River securing a Promissory Note with real estate and improvements located at the Property, which Promissory Note was executed by all Plaintiffs. The Promissory Note was in the amount of $250,000.

12.    In or about June 2013, Sedona filed for Chapter 11 bankruptcy.

13.    Prior to the filing, Sedona had the Property listed for sale with Andy Kushner of RE/MAX, Commercial Division for an asking price of $1,200,000.

14.    Sedona submitted a plan for reorganization pursuant to Chapter 11 of the bankruptcy code, which was approved by the Bankruptcy Court.

15.    The Plaintiffs had defaulted on the Promissory Note securing the Mortgage Deed and an Assignment of Leases and Rents and the total amount due to Mill River by Plaintiffs per the terms of the Promissory Note as of April 22, 2014 was $373,824.61 Dollars.

16.    The Bankruptcy Court appointed Peter M. Scotti & Associates, Inc. to appraise the fair market value of the Property. In February, 2013 the Peter M. Scotti & Associates appraised the present value of the Property at $1,050,000.00 Dollars.

17.    Following the appraisal of the Property, Mill River moved forward with conducting a foreclosure sale of the Property.

18.    The total expenses from the bankruptcy proceeding and foreclosure sale should have been paid for from the sale of the Property.

3

ase Number: PC-2015-1883
led in Providence/Bristol County Superior Court
ubmitted: 5/6/2015 3:57:01 PM
nvelope: 183463
eviewer: Lynn Gaulin
    Case Number: PC-2014-3344
Filed in Providence/Bristol County Superior Court
Submitted: 2/6/2015 9:20:50 AM
Envelope: 79494
Reviewer: Alexa Goneconte

19.     On or about June 5, 2014, Mill River sold the Property at foreclosure sale to

Andromeda Real Estate for $152,000. This sale price amounts to less than $4,000.00 Dollars per

unit of the 42 approved units on the 10 acre property.

20.     Mill River sold the Property without the use of a Rhode Island Auctioneer.

21.     Counsel for Mill River who conducted the foreclosure sale was informed prior to

the sale that there was a potential buyer interested in purchasing the Property for $595,000.00.

22.     Mill River and its Counsel never contacted or attempted to contact the potential

buyer of the Property who was interested in purchasing the Property for $595,000.00.

23.     The sale price of the Property was far below any reasonable commercial re-sale

value of the Property.

24.     Mill River failed to use proper protocol and procedure in conducting the

foreclosure sale and failed to properly perform due diligence in selling the Property.

25.     Mill River's Counsel who conducted the foreclosure sale failed to provide the

Plaintiffs with any explanation as to why the Property was sold for $152,000.00 Dollars despite

repeated calls from 3 attorneys.

26.     The Property was purchased at foreclosure sale by June 5, 2014.

27.     Upon information and belief, Mill River and Andromeda Real Estate, the

purchaser of the Property, conspired together so that the Property could be purchased at a very

low price, far below any commercial reasonable value of the Property.

28.     Mill River breached its fiduciary duty to the Plaintiffs in failing to mitigate the

Plaintiffs' damages and expenses in selling the Property for far below any commercial

reasonable value for the Property.

4

ase Number: PC-2015-1883
led in Providence/Bristol County Superior Court
ubmitted: 5/6/2015 3:57:01 PM
nvelope: 183463
eviewer: Lynn Gaulin
    Case Number: PC-2014-3344
    Filed in Providence/Bristol County Superior Court
    Submitted: 2/6/2015 9:20:50 AM
    Envelope: 79494
    Reviewer: Alexa Geneconte

29.    In connection with Andromeda Real Estate's purchase of the Property at the

foreclosure sale, Mill River executed a Mortgagee's Deed (hereinafter, the "Mortgagee's Deed"),

recorded in the Land Evidence Records of the Town of Smithfield, State of Rhode Island, at

Book 964, Pages 81-84. *See* Exhibit A, attached hereto.

30.    Pursuant to the express terms of the Mortgagee's Deed, Steven A. Ross, Trustee

of the Mill River Lending Trust, is the designated mortgagee. *See* Exhibit A, page 1.

31.    The Mortgagee's Deed states, in relevant part, that "said Mortgagee . . . does

hereby grant, bargain, sell, convey and appoint unto said Mortgagee its successors and assigns,

the following described premises in said mortgage deed . . ," *See* Exhibit A, page 2.

32.    The Mortgagee's Deed is invalid, as Andromeda Real Estate purchased the

Property at the foreclosure sale but said Mortgagee Deed inaccurately conveys and/or transfers

the Property back to Mill River, as the designated mortgagee.

### COUNT I
*(Declaratory Judgment that the Foreclosure Sale of the Property was Invalid)*

33.    Plaintiffs incorporate by reference the averments contained in paragraphs 1

through 32, inclusive, of this Complaint.

34.    Mill River conducted a foreclosure sale of the Property on or about June 5, 2014

and sold the Property at foreclosure sale for $152,000.00 Dollars. The appraised value of the

Property as of February 2013 was $1,050,000.00 Dollars.

35.    Mill River failed to use proper protocol and procedure in conducting the

foreclosure sale and failed to properly perform due diligence in selling the Property.

36.    The sale of the property by Mill River was commercially unreasonable and far

below any fair re-sale value of the Property.

5

ase Number: PC-2015-1883
iled in Providence/Bristol County Superior Court
ubmitted: 5/6/2015 3:57:01 PM
nvelope: 183463
eviewer: Lynn Gaulin
    Case Number: PC-2014-3344
    Filed in Providence/Bristol County Superior Court
    Submitted: 2/8/2016 9:20:50 AM
    Envelope: 79494
    Reviewer: Alexa Goneconte

37.   Mill River failed to use a Rhode Island Auctioneer in conducting the foreclosure sale of the Property and failed to contact potential buyers who were interested in purchasing the Property for a far greater value than what the Property was sold for.

WHEREFORE, the Plaintiffs request the following relief:

a,   A Declaratory Judgment pursuant to and in accordance with R.I. Gen. Laws § 9-30-1 that the foreclosure sale of the Property was invalid;

b.   A Declaratory Judgment pursuant to and in accordance with R.I. Gen. Laws § 9-30-1 that the foreclosure sale of the Property was commercially unreasonable and;

c.   A temporary, preliminary, and permanent injunction ordering that the Defendants not take any action at the Property until this current action is resolved by the Court;

d.   That this Honorable Court grant such further relief as it deems fair and just; and

e.   An award of costs and attorney's fees to the Plaintiffs for prosecuting this action.

### COUNT II
### *(Conspiracy)*

38.   Plaintiffs incorporate by reference the averments contained in paragraphs 1 through 37, inclusive, of this Complaint.

39.   Mill River sold the Property at foreclosure sale on June 5, 2014 to Andromeda Real Estate for $152,000.00.00 Dollars, a price which was far below any fair and reasonable commercial re-sale value of the Property.

40.   Mill River failed to use proper protocol and procedure in conducting the foreclosure sale and failed to properly perform due diligence in selling the Property.

41.   Upon information and belief, Mill River conspired with Andromeda Real Estate, the purchaser of the Property at the foreclosure sale, to purchase the Property for $152,000.00 Dollars, a value far below any reasonable commercial re-sale value of the Property.

6

ase Number: PC-2015-1883
led in Providence/Bristol County Superior Court
ubmitted: 5/6/2015 3:57:01 PM
nvelope: 183463
eviewer: Lynn Gaulin
    Case Number: PC-2014-3344
    Filed in Providence/Bristol County Superior Court
    Submitted: 2/6/2015 9:20:50 AM
    Envelope: 79494
    Reviewer: Alexa Goneconte

**WHEREFORE**, the Plaintiffs request the following relief:

a.    An award of damages provable at trial;

b.    That this Honorable Court grant such further relief as it deems fair and just;

c.    An award of costs and attorney's fees to the Plaintiffs for prosecuting this action.

**COUNT III**
*(Breach of fiduciary Duty)*

42.    Plaintiffs incorporate by reference the averments contained in paragraphs 1 through 41, inclusive, of this Complaint.

43.    Mill River as a commercial lender owed a fiduciary duty to the Plaintiffs, as Sedona executed a Mortgage Deed and an Assignment of Leases and Rents with Mill River securing a Promissory Note with real estate and improvements located at the Property, which Promissory Note was executed by all Plaintiffs.

44.    Mill River failed to conduct the foreclosure sale in a commercially reasonable manner.

45.    Mill River failed to use proper protocol and procedure in conducting the foreclosure sale and failed to properly perform due diligence in selling the Property.

46.    Mill River breached its fiduciary duty to the Plaintiffs.

47.    As a result of Mill River's actions, the Plaintiffs have suffered damages.

**WHEREFORE**, the Plaintiffs request the following relief:

a.    An award of damages in an amount provable at trial;

b.    That this Court grant such further relief as it deems fair and just and;

c.    An award of costs and attorney's fees to the Plaintiffs for prosecuting this action.

ase Number: PC-2015-1883
led in Providence/Bristol County Superior Court
ubmitted: 5/6/2015 3:57:01 PM
nvelope: 183463
eviewer: Lynn Gaulin

Case Number: PC-2014-3344
Filed in Providence/Bristol County Superior Court
Submitted: 2/6/2015 9:20:50 AM
Envelope: 79404
Reviewer: Alexa Gonaconte

## COUNT IV
### *(Declaratory Judgment that the Mortgagee's Deed is Invalid)*

48.     Plaintiffs incorporate by reference the averments contained in paragraphs 1 through 47, inclusive, of this Complaint.

49.     Mill River conducted a foreclosure sale of the Property on June 5, 2014, and sold the Property to Andromeda Real Estate for $152,000.00 Dollars.

50.     In connection with Andromeda Real Estate's purchase of the Property at the foreclosure sale, Mill River executed a Mortgagee's Deed recorded in the Land Evidence Records of the Town of Smithfield, State of Rhode Island, at Book 964, Pages 81-84. *See* Exhibit A.

51.     Pursuant to the express terms of the Mortgagee's Deed, Steven A. Ross, Trustee of the Mill River Lending Trust, is designated as the sole mortgagee. *See* Exhibit A, page 1.

52.     The Mortgagee's Deed states, in relevant part, that "said Mortgagee . . . does hereby grant, bargain, sell, convey and appoint unto said Mortgagee its successors and assigns, the following described premises in said mortgage deed . . ." *See* Exhibit A, page 2.

53.     As purchaser of the Property at the foreclosure sale for $152,000.00 Dollars, Andromeda Real Estate is the proper entity to whom the Property should have been conveyed and/or transferred to within the Mortgagee's Deed.

54.     Therefore, the Mortgagee's Deed inaccurately conveys and/or transfers the Property back to the mortgagee, otherwise known as Steven A. Ross in his capacity as Trustee of the Mill River Lending Trust.

55.     As a result of this blatant inaccuracy, the Mortgagee's Deed is defective and invalid.

        **WHEREFORE,** the Plaintiffs request the following relief:

8

ase Number: PC-2015-1883
led in Providence/Bristol County Superior Court
ubmitted: 5/6/2015 3:57:01 PM
nvelope: 183463
eviewer: Lynn Gaulin
      Case Number: PC-2014-3344
      Filed in Providence/Bristol County Superior Court
      Submitted: 2/6/2015 9:20:50 AM
      Envelope: 79494
      Reviewer: Alexa Goneconte

      a.  A Declaratory Judgment that the Mortgagee's Deed is invalid;

      b.  A temporary, preliminary, and permanent injunction ordering that Defendants

not take any action at the Property until this action is resolved by the Court;

      c. . That this Honorable Court grant such further relief as it deems fair and just; and

      d.  An away of costs and attorney's fees to the Plaintiffs for prosecuting this action.

Plaintiffs,
Patrick T. Conley, Gail C. Cahallan Conley
and Sedona Associates, LLP

By and through their Attorneys

/s/ John O. Mancini, Esq.
John O. Mancini, Esq. (#6061)
Kelly & Mancini, PC
128 Dorrance Street, Suite 300
Providence, Rhode Island 02903
Tel. (401) 490-7334
Tel. (401) 490-7874
www.kellymancini.com

Dated: February 6, 2015

*[Remainder of Page Left Intentionally Blank]*

9

ase Number: PC-2015-1883
led in Providence/Bristol County Superior Court
ubmitted: 5/6/2015 3:57:01 PM
nvelope: 163463
eviewer: Lynn Gaulin
  Case Number: PC-2014-3344
  Filed in Providence/Bristol County Superior Court
  Submitted: 2/6/2015 9:20:50 AM
  Envelope: 79494
  Reviewer: Alexa Gonasconte

## CERTIFICATE OF SERVICE

I hereby certify that, on the 6th day of February, 2015, I filed and served the within *Proposed Order* through the electronic filing system on the following parties:

Gary M. Hogan, Esq.
Gilmore, Reese & Carlson, PC
155 South Main Street, Suite 405
Providence, RI 02903

The document electronically filed and served is available for viewing and/or downloading from the Rhode Island Judiciary's Electronic Filing System.

/s/ John O. Mancini
Kelly & Mancini, PC
128 Dorrance Street, Suite 300
Providence, RI  02903
Tel#:  (401) 490-7334
Fax#:  (401) 490-7874

10

ase Number: PC-2015-1883
led in Providence/Bristol County Superior Court
ubmitted: 5/6/2015 3:57:01 PM
nvelope: 183463
eviewer: Lynn Gaulin
    Case Number: PC-2014-3344
    Filed in Providence/Bristol County Superior Court
    Submitted: 2/8/2015 9:20:50 AM
    Envelope: 79494
    Reviewer: Alexa Goneconte

# EXHIBIT A

ase Number: PC-2015-1883
led in Providence/Bristol County Superior Court
ubmitted: 5/6/2015 3:57:01 PM
nvelope: 183463
eviewer: Lynn Gaulin
    Case Number: PC-2014-3344
    Filed in Providence/Bristol County Superior Court
    Submitted: 2/6/2015 9:20:50 AM
    Envelope: 79494
    Reviewer: Alexa Goneconte



INST# 00025643
BK# 964 PG# 81

This area for recording purposes only

## MORTGAGEE'S DEED

WHEREAS, Sedona Associates, LLC, a Rhode Island limited liability company, having a business mailing address of 1445 Wampanoag Trail, Suite 203, East Providence, RI 02915 (hereinafter the "Mortgagor"), by mortgage deed and assignment of leases and rents dated July 13, 2009, and recorded in the Land Evidence Records of the Town of Smithfield Rhode Island, in Book 697, at Page 210 (hereinafter the "Mortgage"), conveyed to Steven A. Ross, Trustee of the Mill River Landing Trust u/d/t dated July 9, 2009, having an address of 83 Speen Street, Natick, MA 01760 (hereinafter the "Mortgagee") in fee and in mortgage, that certain estate hereinafter described to secure the payment of a negotiable promissory note for the sum of Two Hundred Fifty Thousand and 00/1000 Dollars ($250,000.00), bearing even date with said mortgage deed and payable to said Mortgagee with interest thereon as provided in said note, and granted the power to said Mortgagee, its successors and assigns, on default in the payment of said principal sum or of said interest or taxes and assessments levied against the mortgaged premises, to sell, together or in parcels, all and singular, the premises thereby granted after giving notice of said intended sale by advertisement as in said mortgage deed provided, all of which is more particularly described in said mortgage deed recorded as aforesaid; and

WHEREAS, default was made in the payment of said note, and after said default, Mortgagee advertised the mortgaged premises hereinafter described for sale at public auction in The Pawtucket Times, a public newspaper published in the City of Pawtucket, once each week for three (3) successive weeks, immediately prior to the date recited in said advertisement for the

ase Number: PC-2015-1883
iled in Providence/Bristol County Superior Court
ubmitted: 5/6/2015 3:57:01 PM
nvelope: 183463
eviewer: Lynn Gaulin
    Case Number: PC-2014-3344
    Filed in Providence/Bristol County Superior Court
    Submitted: 2/6/2015 9:20:50 AM
    Envelope: 79494
    Reviewer: Alexa Goneconte

INST: 000284+3
BK: 764 PG: 82

puztion sale, and mailed by regular and certified mail, return receipt requested, notice of said foreclosure at least twenty (20) days prior to the first advertisement of foreclosure to Mortgagor at the address of the real estate, at its last known address and, if different, at the address listed with the tax assessor's office of the city or town where the real estate is located or any other address it has designated by written notice to Mortgagee at its last known address, all as by the power of sale in said mortgage deed provided, and to all other lien holders and parties of interest of record, and at the auction sale thereof held pursuant to said advertisement on June 5, 2014, Andromeda Real Estate Partners, LLC, a Rhode Island limited liability company, having a mailing address of 1849 Old Louisquisset Pike, Lincoln, Rhode Island, 02865, being the highest bidder for the mortgaged premises hereinafter described, became the purchaser thereof for the sum of One Hundred Fifty-Two Thousand ($152,000.00) and 00/100 Dollars,

        NOW THEREFORE, said Mortgagee, by virtue and in exercise of the powers in this behalf in it vested under and by said mortgage deed and of every other power it thereunto enabling, and for and in consideration of said sum of One Hundred Fifty-Two Thousand ($152,000.00) and 00/100 Dollars to it paid by Andromeda Real Estate Partners, LLC, a Rhode Island limited liability company, having a mailing address of 1849 Old Louisquisset Pike, Lincoln, Rhode Island, 02865, the receipt whereof is hereby acknowledged, does hereby grant, bargain, sell, convey and appoint unto said Mortgagee its successors and assigns, the following described premises in said mortgage deed described and conveyed, to wit:

            That parcel of land with all the buildings and improvements thereon, situated in the village of Georgiaville, Town of Smithfield, and State of Rhode Island, bounding:

            NORTHEASTERLY on Whipple Avenue,
            EASTERLY on the Woonasquatucket River,
            SOUTHEASTERLY on land now or lately of Ida M. Mercier,

-2-

ase Number: PC-2015-1883
iled in Providence/Bristol County Superior Court
ubmitted: 5/6/2015 3:57:01 PM
nvelope: 183463
eviewer: Lynn Gaulin

Case Number: PC-2014-3344
Filed in Providence/Bristol County Superior Court
Submitted: 2/6/2015 9:20:50 AM
Envelope: 79494
Reviewer: Alexa Goneconte

INST= 00028643
Bk: 1 942 Pg: 83

SOUTHWESTERLY on the former location of the New York, New Haven and
Hartford Railroad, and
NORTHWESTERLY on Higgins Street.

Said parcel comprises Lot 41 (forty-one) on that plat entitled "Plan in Sub-
Division Benson Mill Property of Manville-Jenckes Corporation Smithfield, R.I.
April 1935 Charles P. Parker Civil Engineer Woonsocket, R.I." which plat is
recorded with the Records of Land Evidence in said Town of Smithfield on Plat
Card 65, and a parcel next southerly thereof.
Being the same premises conveyed by two deeds to Narragansett Gray Iron
Foundry, Inc., from Forest Scott, one dated April 14, 1961, and recorded in said
Records in Book 25 at Page 375, and the other dated July 16, 1968, and recorded
in said Records in Book 38 at Page 208.
Together with the rights and privileges and subject to any obligations incidental to
the Mortgagor's membership in the Woonasquatucket Reservoir Company, Inc. as
evidenced by certificate of Membership dated July 13, 1964, and recorded in said
Records in Book 27, Page 494;
Subject, also, to flowage right, reservations and easements referred to in the two
deeds hereinbefore referred to, if deemed to apply.
Meaning and intending to convey Lot 71 on Assessor's Plat 23 and Lots 66 and
67 on Assessor's Plat 24, said parcel consisting of 10.19 acres more or less.
Subject to Zoning Decision at Book 521, Page 17.
Subject to Notice of Wetlands Violation from RI DEM recorded on 5/2/73, if
deemed to apply.

TO HAVE AND TO HOLD the aforegranted premises, with all the privileges and

appurtenances thereunto belonging, unto and to the use of said Mortgagee, its successors and,

assigns, forever.

The transfer of the aforegranted premises was the result of foreclosure and there

were no net proceeds subject to the withholding provisions of R.I. Gen. Laws § 44-30-71.3.

The undersigned hereby certifies that this transfer is exempt from the smoke

detector and carbon monoxide requirements as provided in R.I.G.L. 23-28.35-14.

-3-

ase Number: PC-2015-1883
iled in Providence/Bristol County Superior Court
ubmitted: 5/6/2015 3:57:01 PM
nvelope: 183463
eviewer: Lynn Gaulin

Case Number: PC-2014-3344
Filed in Providence/Bristol County Superior Court
Submitted: 2/8/2015 9:20:50 AM
Envelope: 78494
Reviewer: Alexa Goneconte

In witness whereof, said Mortgagee has caused its name to be signed and its corporate seal to be affixed by its officer thereunto duly authorized, this 17th day of June 2014.

In the Presence of:

MILL RIVER LENDING TRUST

By:
Print Name: Steven A. Ross
Print Title: Trustee

## COMMONWEALTH OF MASSACHUSETTS

Middlesex, ss

On this 17th day of June 2014, before me the undersigned notary public, personally appeared the above-named Steven A. Ross, Trustee of Mill River Lending Trust as aforesaid, and proved to me through satisfactory evidence of identification, which was _____ to be the person whose name is signed on the preceding documents, and acknowledged to me that he/she signed it voluntarily as Trustee as aforesaid, for its stated purpose.

Notary Public
My commission expires:

-4-

Case Number: PC-2015-1883
Filed in Providence/Bristol County Superior Court
Submitted: 5/6/2015 3:57:01 PM
Envelope: 183463
Reviewer: Lynn Gaulin

# EXHIBIT C

ase Number: PC-2015-1883
iled in Providence/Bristol County Superior Court
ubmitted: 5/6/2015 3:57:01 PM
nvelope: 183463
eviewer: Lynn Gaulin

# Commonwealth Land Title Insurance Company

February 26, 2015

*Via US Mail*

Paul Vanasse, Esq.
Paul Vanasse and Associates
1849 Old Louisquisset Pike
Lincoln, RI 02865

|       |              |                                        |
|-------|--------------|----------------------------------------|
| RE:   | Claim no.:   | 510306                                 |
|       | Policy no.:  | 81306-91541914                         |
|       | Property:    | 29 Whipple Avenue; Smithfield, RI      |
|       | Insured:     | Andromeda Real Estate Partners, LLC    |

Dear Mr. Vanasse:

As you are aware from prior correspondence, I am the current claims counsel for Commonwealth Land Title Insurance Company ("the Company") for the above referenced claim. The Company received notice of your February 2015 claim tender.

It is my understanding that, on or about July 03, 2014, title to the above-mentioned property was conveyed to Andromeda Real Estate Partners, LLC ("the insured") via a foreclosure sale by Mill River Lending Trust ("Mill River"). The conveyance was recorded in BK 964, Pg. 81 in the Land Evidence Records for the Town of Smithfield, RI. An Owner's Policy was acquired in conjunction with the insured transaction.

Your claim notice explained that you were recently served with a Summons and Complaint that was initiated by Patrick Conley, Gail Conley and Sedona Associates ("Plaintiffs"). It appears that the Plaintiffs argued that Mill River violated R.I. Gen. Laws §9-30-1 when it failed to exercise proper protocol and perform due diligence in selling the property for a price that was far below fair resale. The complaint also alleged that the conveyance to the insured was not valid because the insured's mortgage inaccurately conveys/transfers the property back to the mortgagee (Steven A. Ross) in his capacity as Trustee of Mill River. You have now tendered the matter to the company for defense of the allegations. If my recitation of the foregoing is incorrect, please notify me.

At this time, I would direct your attention to Paragraphs 5(b) of the Conditions and Stipulations section of the Policy which states,

5. *DEFENSE AND PROSECUTION OF ACTIONS;DUTY OF THE INSURED CLAIMANT TO COOPERATE.*

...

*(b) The Company shall have the right, at its own cost, to institute and prosecute*

ase Number: PC-2015-1883
led in Providence/Bristol County Superior Court
ubmitted: 5/6/2015 3:57:01 PM
nvelope: 183463      Claim no. 510306
eviewer: Lynn Gaulin February 26, 2015
Page 2

> *any action or proceeding or to do any other act which in its opinion may be*
> *necessary or desirable to establish the title to the estate or interest, as insured, or*
> *to prevent or reduce loss or damage to the insured. The Company may take any*
> *appropriate action under the terms of this policy, whether or not it shall be liable*
> *hereunder, and shall not thereby concede liability or waive any provision of this*
> *policy. If the Company shall exercise its rights under this paragraph, it shall do*
> *so diligently.*

It appears that the issue of invalid foreclosure, raised in your claim tender, does fall within the coverage parameters of the policy. The Company intends to retain counsel to defend the action in relation to the validity of the foreclosure. The Company accepts the tender, in relation to the allegations of invalid foreclosure, based on the current status of our investigation. The Company does not undertake the defense of the insured in relation to Counts I-III which involve allegations of a violation of R.I. Gen. Laws §9-30-1, conspiracy, and breach of fiduciary duty. These allegations do not relate to title issues as defined under the terms of the policy.

The Company reserves its right to continue its independent investigation of this matter and reserves the right to assert any defense, which though not apparent at this time, becomes apparent at a later date. If at some point in the future the Company concludes that it has no actual or potential obligation under the policy to indemnify or provide legal representation to the insured in this matter, the Company expressly reserves the right to decide, after giving reasonable notice, to discontinue indemnification and/or discontinue providing the insured with a defense of the above-referenced action. The Company also reserves the right to seek a judicial declaration determining that it has no obligation to indemnify or provide a defense of the above-referenced action. The Company also reserves the right to amend this response as further information may become available during the course of the litigation and investigation.

The Company proposes to retain:

**Douglas Whitaker, Esq.**
Fidelity National Law Group
265 Franklin Street, 16th Floor
Boston, MA 02110
Ph: 617-316-0143
E-mail: Doug.Whitatker@fnf.com

Attorney Whitaker will forward a retainer letter setting forth the terms of her representation. *The retainer letter must be signed by the client and returned to Attorney Whitaker before representation can begin. Accordingly, it is important that the retainer letter be signed and returned as soon as possible.* To that end, if you are not the authorized agent of the client for that purpose, please provide direct contact information for the person to whom the retainer letter should be directed. If Attorney Whitaker does not receive contrary direction from you, the retainer letter will be forwarded to your attention.

To avoid any confusion, your firm should remain counsel of record until the signed retainer agreement is received and an Order of Substitution is entered by the Court. Until Attorney

ase Number: PC-2015-1883
iled in Providence/Bristol County Superior Court
ubmitted: 5/6/2015 3:57:01 PM
nvelope: 183463     Claim no. 510306
eviewer: Lynn Gaulin February 26, 2015
                Page 3

Whitaker is substituted as counsel by the Court, counsel of record should continue to comply with any applicable deadlines or other actions which may be necessary and keep the Company advised of the same.

Once retained, Attorney Whitaker will be in contact with you regarding her representation. Attorney Whitaker will enter an appearance on behalf of your clients. Please provide your full cooperation in this matter. Copies of all correspondence, pleadings, documents, and other writings, created or received, except those which are confidential communications between attorney and client will be forwarded to me.

The Company does not by this letter consent to pay attorneys' fees in representing you, except as stated herein, including the prosecution of any separate complaints or cross-complaints which may be available to you. Attorney Whitaker is retained for the purpose of defending the insured in relation to the allegations of invalid foreclosure, raised by the Plaintiff, in Count IV only. Further, please be advised that any other issues/questions concerning coverage under the policy should be directed to my attention.

Please note that reference to any particular provision of the policy in this letter shall not be construed as a waiver of any other term or provision of the policy. The Company retains the right to supplement this letter. Also, please be advised that the Company reserves the right to supplement its response to your tender. If you have any questions or concerns, please do not hesitate to contact me.

If you have any questions concerning any of the above, please contact me. Otherwise, I look forward to working with you on this matter and managing it to a successful conclusion.

Sincerely,

Stephanie C. Thomas
Vice President/Sr. Claims Counsel

SCT

Case Number: PC-2015-1883
Filed in Providence/Bristol County Superior Court
Submitted: 5/6/2015 3:57:01 PM
Envelope: 183463
Reviewer: Lynn Gaulin

# EXHIBIT D

Case Number: PC-2015-1883
Filed in Providence/Bristol County Superior Court
Submitted: 5/6/2015 3:57:01 PM
Envelope: 183463
Reviewer: Lynn Gaulin

# Commonwealth Land Title Insurance Company

April 9, 2015

*Via E-Mail to: rflanders@hinckleyallen.com*

Robert Flanders, Jr. Esq.
Hinckley Allen
50 Kennedy Plaza
Suite 1500
Providence, RI 02903-2319

|  |  |  |
|--|--|--|
| RE: | Claim no.: | 510306 |
|  | Policy no.: | 81306-91541914 |
|  | Property: | 29 Whipple Avenue; Smithfield, RI |
|  | Insured: | Andromeda Real Estate Partners, LLC |

Dear Mr. Flanders:

As you are aware from prior communication, I am the current claims counsel for Commonwealth Land Title Insurance Company ("the Company") for the above referenced claim. The Company received notice of the claim on or about February 2015.

It is my understanding that, on or about July 03, 2014, title to the above-mentioned property was conveyed to Andromeda Real Estate Partners, LLC ("the insured") via a foreclosure sale by Mill River Lending Trust ("Mill River"). The conveyance was recorded in BK 964, Pg. 81 in the Land Evidence Records for the Town of Smithfield, RI. An Owner's Policy was acquired in conjunction with the insured transaction.

The claim notice explained that your firm represents the insured in the pending action that was recently initiated by Patrick Conley, Gail Conley and Sedona Associates ("Plaintiffs"). It appears that the Plaintiffs argued that Mill River violated R.I. Gen. Laws §9-30-1 when it failed to exercise proper protocol and perform due diligence in selling the property for a price that was far below fair resale. The complaint also alleged that the conveyance to the insured was not valid because the insured's mortgage inaccurately conveys/transfers the property back to the mortgagee (Steven A. Ross) in his capacity as Trustee of Mill River. The matter was then tendered to the Company for defense of the allegations. If my recitation of the foregoing is incorrect, please notify me.

At this time, I would direct your attention to Paragraphs 5(b) of the Conditions and Stipulations section of the Policy which states,

> 5. *DEFENSE AND PROSECUTION OF ACTIONS;DUTY OF THE INSURED CLAIMANT TO COOPERATE.*

...

ase Number: PC-2015-1883
iled in Providence/Bristol County Superior Court
ubmitted: 5/6/2015 3:57:01 PM
nvelope: 183463
eviewer: Lynn Gau...Kalm no. 510306

April 9, 2015
Page 2

> *(b) The Company shall have the right, at its own cost, to institute and prosecute any action or proceeding or to do any other act which in its opinion may be necessary or desirable to establish the title to the estate or interest, as insured, or to prevent or reduce loss or damage to the insured. The Company may take any appropriate action under the terms of this policy, whether or not it shall be liable hereunder, and shall not thereby concede liability or waive any provision of this policy. If the Company shall exercise its rights under this paragraph, it shall do so diligently.*

It appears that the issue of invalid foreclosure does fall within the coverage parameters of the policy. The Company accepts the tender of defense as to Count IV based on the current status of our investigation. The complaint also includes Counts I-III, which involve allegations of a violation of R.I. Gen. Laws §9-30-1, conspiracy, and breach of fiduciary duty. Please be advised that while these allegations are not title issues covered under the provisions of the policy, the Company will agree to undertake the defense of the insured, for Counts I-III subject to the following.

The Company specifically reserves its rights in relation to the defense of Counts I-III and reserves the right to discontinue providing the insured with a defense of Counts I-III. As Counts I-III are not covered title issues, the Company also specifically reserves its rights, and the Company will not assume responsibility, for any final loss or damage determination related to Counts I-III. Lastly, the Company specifically reserves its right to discontinue the defense of the matter in relation to Count I-III. In the event a ruling is rendered, thereby dismissing Count IV, the Company reserves the right to cease its defense of the litigation and the insured will be required to assume the continued responsibility for the defense of the Counts I-III. The Company will not maintain any responsibility for reimbursement of attorney's fees for the insured's continued defense of the matter.

The Company reserves its right to continue its independent investigation of this matter and reserves the right to assert any defense, which though not apparent at this time, becomes apparent at a later date. If at some point in the future the Company concludes that it has no actual or potential obligation under the policy to indemnify or provide legal representation to the insured in this matter, the Company expressly reserves the right to decide, after giving reasonable notice, to discontinue indemnification and/or discontinue providing the insured with a defense of the above-referenced action. The Company also reserves the right to seek a judicial declaration determining that it has no obligation to indemnify or provide a defense of the above-referenced action. The Company also reserves the right to amend this response as further information may become available during the course of the litigation and investigation.

The Company will supplement this correspondence with the name of counsel that is assigned to handle the matter. That attorney will then contact you regarding his representation and will enter an appearance on behalf of the insured. Please provide your full cooperation in this matter. The Company does not by this letter consent to pay attorneys' fees in representing the insured, except as stated herein, including the prosecution of any separate complaints or cross-complaints which may be available to you. Further, please be advised that any other issues/questions concerning

Case Number: PC-2015-1883
Filed in Providence/Bristol County Superior Court
Submitted: 5/6/2015 3:57:01 PM
Envelope: 183463
Reviewer: Lynn Gaulin

Claim no. 510306
April 9, 2015
Page 3

coverage under the policy should be directed to my attention.

Please note that reference to any particular provision of the policy in this letter shall not be construed as a waiver of any other term or provision of the policy. The Company retains the right to supplement this letter. Also, please be advised that the Company reserves the right to supplement its response to your tender. If you have any questions or concerns, please do not hesitate to contact me.

If you have any questions concerning any of the above, please contact me. Otherwise, I look forward to working with you on this matter and managing it to a successful conclusion.

Sincerely,

Stephanie C. Thomas
Vice President/Sr. Claims Counsel

SCT

Case Number: PC-2015-1883
Filed in Providence/Bristol County Superior Court
Submitted: 5/6/2015 3:57:01 PM
Envelope: 183463
Reviewer: Lynn Gaulin

# EXHIBIT E

Case Number: PC-2015-1883
Filed in Providence/Bristol County Superior Court
Submitted: 5/6/2015 3:57:01 PM
Envelope: 183463
Reviewer: Lynn Gaulin

 HINCKLEY
ALLEN

50 Kennedy Plaza, Suite 1500
Providence, RI 02903-2319

p: 401-274-2000  f: 401-277-9600
hinckleyallen.com

**Robert G. Flanders, Jr.**
*rflanders@hinckleyallen.com*
**Direct Dial: (401) 457-5184**

April 15, 2015

*__Via First Class Mail__*

Stephanie C. Thomas
Vice President/Sr. Claims Counsel
Commonwealth Land Title Insurance Company
601 Riverside Avenue
Building Five, Fourth Floor
Jacksonville, FL 32204

Commonwealth Land Title Insurance Company
P.O. Box 45023
Jacksonville, FL 32232-5023

Re:    Claim No. 510306; 29 Whipple Avenue, Smithfield, RI

Dear Ms. Thomas:

We acknowledge your April 9, 2015 letter and Commonwealth's decision to accept its duty to
defend Andromeda on Counts I-IV of the pending action. We disagree, however, with your
assertion that Counts I-III do not relate to title issues. Further, because Commonwealth has a
conflict of interest with respect to its defense of Count I, we request that Commonwealth agree
to pay all costs and fees of independent counsel selected by Andromeda.

First, Counts I-III of the complaint relate to title issues. These counts involve the foreclosure
sale at which Andromeda purchased the Property and the circumstances attendant to that
foreclosure sale. Count I seeks a declaratory judgment under the Rhode Island Uniform
Declaratory Judgment Act, R.I. Gen. Laws § 9-30-1, *et seq.* The Plaintiffs request that the
Court invalidate the foreclosure sale at which Andromeda purchased the Property. A judicial
order declaring that Andromeda's purchase of the Property was invalid would implicate
Andromeda's title to the Property and Andromeda's Policy covers "[a]ny defect in or lien or
encumbrance on the Title." Thus, Count I asserts a claim covered by the Policy.

---

▶ ALBANY ▶ BOSTON ▶ CONCORD ▶ HARTFORD ▶ NEW YORK ▶ PROVIDENCE

HINCKLEY, ALLEN & SNYDER LLP, ATTORNEYS AT LAW

ase Number: PC-2015-1883
iled in Providence/Bristol County Superior Court
ubmitted: 5/6/2015 3:57:01 PM
nvelope: 183463
Reviewer: Lynn Gaglione

Stephanie C. Thomas
Vice President/Sr. Claims Counsel
April 15, 2015
Page 2

Counts II and III relate to the circumstances leading up to the allegedly invalid foreclosure sale. Count II alleges that Andromeda conspired with the foreclosing entity to obtain the Property at a price below any commercially reasonable value of the Property. Count III alleges the foreclosing entity breached its fiduciary duty to the Plaintiffs. Under Rhode Island law, a court may set aside a foreclosure sale if the disparity between property value and the foreclosure price shocks the conscience and other attendant circumstances are present that determine the foreclosure sale was so unjust and inequitable as to justify setting it aside. *See Wooley v. Tougas*, 1 A.2d 92, 93 (R.I. 1938). Plaintiffs will likely argue, as they did in papers seeking a preliminary injunction, that the circumstances relating to Counts II and III are attendant circumstances that warrant the Court invalidating the foreclosure sale – and thus creating a defect in Andromeda's title to the Property.

Second, the allegations in the complaint and several exclusions in the Policy create a conflict of interest between Andromeda and Commonwealth. Under Rhode Island law, "where a conflict of interests has arisen between an insurer and its insured, the attorney to defend the insured in the tort suit should be selected by the insured and the reasonable value of the professional services rendered should be assumed by the insurer." *Employers' Fire Ins. Co. v. Beals*, 240 A.2d 397, 404 (R.I. 1968). Although Commonwealth agreed to cover any defect in Title, the Exclusions from Coverage disclaim coverage for: defects created or agreed to by Andromeda (3(a)); defects not known to Commonwealth, but known to Andromeda (3(b)); and defects that would not have been sustained if Andromeda had paid value for the title (3(e)).

The complaint alleges that Andromeda did not pay fair value for the Property and that Andromeda conspired with the foreclosing entity. These allegations implicate policy exclusions. Application of any exclusion might relieve Commonwealth of its coverage obligations, so Commonwealth has an incentive to prove that one or more exclusions apply. That interest is at odds with Andromeda's interest in disproving all allegations and with prevailing on each count. Consequently, we request that Commonwealth agree to pay for all costs and fees of counsel selected by Andromeda because of the conflict of interest this action creates. We also request that Commonwealth reimburse Andromeda for all costs and fees already incurred in relation to its defense of this lawsuit.

We would prefer to resolve this issue without seeking court intervention, but will do so if necessary. Enclosed you will find a draft complaint that outlines the relief that we will seek if Commonwealth does not agree to pay for independent counsel.

We request that Commonwealth notify us by 5:00 p.m. on Thursday April 23, 2015, whether it will agree to pay for independent counsel. If we do not receive a response by then, we will presume that you refuse to do so and we will seek appropriate relief.

in Providence/Bristol County Superior Court
mitted: 5/6/2015 3:57:01 PM
elope: 183463
iewer: Lynn Gaulin

# EXHIBIT F

I in Providence/Bristol County Superior Court
mitted: 5/6/2015 3:57:01 PM
elope: 183463
ewer: Lynn Gaulin



# Commonwealth Land Title Insurance Company

April 28, 2015

*Via E-Mail to: rflanders@hinckleyallen.com*

Robert Flanders, Jr, Esq.
Hinckley Allen
50 Kennedy Plaza
Suite 1500
Providence, RI 02903-2319

|     |           |                                         |
|-----|-----------|-----------------------------------------|
| RE: | Claim no.:  | 510306                                  |
|     | Policy no.: | 81306-91541914                          |
|     | Property:   | 29 Whipple Avenue; Smithfield, RI       |
|     | Insured:    | Andromeda Real Estate Partners, LLC     |

Dear Mr. Flanders:

As you are aware from prior correspondence, I am the current claims counsel for Commonwealth Land Title Insurance Company ("the Company") for the above referenced claim. The Company received the February 2015 claim tender.

It is my understanding that, on or about July 03, 2014, title to the above-mentioned property was conveyed to Andromeda Real Estate Partners, LLC ("the insured") via a foreclosure sale by Mill River Lending Trust ("Mill River"). The conveyance was recorded in BK 964, Pg. 81 in the Land Evidence Records for the Town of Smithfield, RI. An Owner's Policy was acquired in conjunction with the insured transaction.

The claim notice explained the recent service of a Summons and Complaint that was initiated by Patrick Conley, Gail Conley and Sedona Associates ("Plaintiffs"). The Plaintiffs argued that Mill River violated R.I. Gen. Laws §9-30-1 when it failed to exercise proper protocol and perform due diligence when it sold the property for a price that was far below fair resale. The complaint also alleged that the conveyance to the insured was not valid because the insured's mortgage inaccurately conveys/transfers the property back to the mortgagee (Steven A. Ross) in his capacity as Trustee of Mill River. You then tendered the matter to the company for defense of the allegations.

Paragraphs 5(b) of the Conditions and Stipulations section of the Policy which states,

## 5. *DEFENSE AND PROSECUTION OF ACTIONS*

*(b) The Company shall have the right, at its own cost, to institute and prosecute any action or proceeding or to do any other act which in its opinion may be necessary or desirable to establish the title to the estate or interest, as insured, or*

I in Providence/Bristol County Superior Court
nitted: 5/6/2015 3:57:01 PM
slope: 183463
ewer: Lynn Gaulin

Claim no. 510306
April 28, 2015
Page 2

> *to prevent or reduce loss or damage to the Insured. The Company may take any appropriate action under the terms of this policy, whether or not it shall be liable hereunder, and shall not thereby concede liability or waive any provision of this policy. If the Company shall exercise its rights under this paragraph, it shall do so diligently.*

Per the policy, the issue of invalid foreclosure does fall within the coverage parameters of the policy. Accordingly, on or about February 26, 2015, the Company issued correspondence; accepting the tender of defense as to Count IV only, based on the current status of our investigation.

The complaint also included Counts I-III, which involve allegations of a violation of R.I. Gen. Laws §9-30-1, conspiracy, and breach of fiduciary duty. Although, these allegations are not title issues covered under the provisions of the policy, on April 9, 2015 the Company agreed to a compromise and offered to undertake the defense of the insured, for Counts I-III subject to the following reservations:

I) The Company specifically reserves its rights in relation to the defense of Counts I-III and reserves the right to discontinue providing the insured with a defense of Counts I-III.

II) Since Counts I-III are not covered title issues, the Company also specifically reserves its rights, and the Company will not assume responsibility, for any final loss or damage determination related to Counts I-III.

III) The Company specifically reserves its right to discontinue the defense of the matter in relation to Count I-III. In the event a ruling is rendered, thereby dismissing Count IV; the Company reserves the right to cease its defense of the litigation and the insured will be required to assume the continued responsibility for the defense of the Counts I-III. The Company will not maintain any responsibility for reimbursement of attorney's fees for the insured's continued defense of the matter.

Per Paragraph 5(a) of the policy:

### 5.  DEFENSE AND PROSECUTION OF ACTIONS

(a) *Upon written request by the Insured, and subject to the options contained in Section 7 of these Conditions, the Company, at its own cost and without unreasonable delay, shall provide for the defense of an Insured in litigation in which any third party asserts a claim covered by this policy adverse to the Insured. This obligation is limited to only those stated causes of action alleging matters insured against by this policy. The Company shall have the right to select counsel of its choice (subject to the right of the Insured to object for reasonable cause) to represent the Insured as to those stated causes of action. It shall not be liable for and will not pay the fees of any other counsel. The Company will not pay any fees, costs, or expenses incurred by the Insured in the defense of those causes of action that allege matters not insured against by this policy.*

J in Providence
mitted: 5/6/2015 3:57:01 PM
elope: 183463
iewer: Lynn Gaulin

Claim no. 510306
April 28, 2015
Page 3

Your subsequent April 15, 2015 correspondence explained that you felt that any Company harbors a conflict of interest in relation to Count I. Moreover, you feel that the allegations raised in Counts II and III trigger certain exclusions of the policy and, therefore, create an additional conflict of interest. You sought the retention of independent counsel for the defense of Counts I-III; to be borne by the Company. As previously explained, the Company was willing to retain different counsel to defend both the uncovered allegations in Counts I-III and the covered Count IV. However, the most recent discussions revealed that you maintained concerns regarding *any* counsel retained by the Company. You explained that any Company retained counsel *may* foster a primary obligation to the Company, as opposed to the insured, despite the fact that acceptance of our offer of retention did not waive the insured's right to dispute the coverage issue.

As the policy provisions set forth, the Company maintains the right to select counsel for the defense of the covered action. Based on your most recent reservations, the Company is forced to revert back to its original position and will retain counsel to defend the action in relation to the validity of the foreclosure that was raised in Count IV only. The Company does not undertake the defense of the insured in relation to Counts I-III which involve allegations of a violation of R.I. Gen. Laws §9-30-1, conspiracy, and breach of fiduciary duty. These allegations do not relate to title issues as defined under the terms of the policy.

The Company reserves its right to continue its independent investigation of this matter and reserves the right to assert any defense, which though not apparent at this time, becomes apparent at a later date. If at some point in the future the Company concludes that it has no actual or potential obligation under the policy to indemnify or provide legal representation to the insured in this matter, the Company expressly reserves the right to decide, after giving reasonable notice, to discontinue indemnification and/or discontinue providing the insured with a defense of the above-referenced action. The Company also reserves the right to seek a judicial declaration determining that it has no obligation to indemnify or provide a defense of the above-referenced action. The Company also reserves the right to amend this response as further information may become available during the course of the litigation and investigation.

The Company will supplement this correspondence with the name of counsel that is assigned to handle the matter. That attorney will then contact you regarding his representation and will enter an appearance on behalf of the insured. Please provide your full cooperation in this matter. The Company does not by this letter consent to pay attorneys' fees in representing the insured, except as stated herein, including the prosecution of any separate complaints or cross-complaints which may be available to you. The attorney is retained to defend the interests of the insured specifically for the attack on the validity of the insured mortgage. Further, please be advised that any other issues/questions concerning coverage under the policy should be directed to my attention.

Please note that reference to any particular provision of the policy in this letter shall not be construed as a waiver of any other term or provision of the policy. The Company retains the right to supplement this letter. Also, please be advised that the Company reserves the right to supplement its response to your tender. If you have any questions or concerns, please do not hesitate to contact me.

I in Providence Courts
mitted: 5/6/2015 3:57:01 PM
elope: 183463
ewer: Lynn Gaulin

Claim no. 510306
April 28, 2015
Page 4

If you have any questions concerning any of the above, please contact me.  Otherwise, I look forward to working with you on this matter and managing it to a successful conclusion.

Sincerely,

Stephanie C. Thomas
Vice President/Sr. Claims Counsel

SCT

**Miller, Cynthia**

| | |
|---|---|
| **From:** | Gomes, Rebecca |
| **Sent:** | Thursday, February 19, 2015 10:13 AM |
| **To:** | Title Claims |
| **Cc:** | Perna, Lance |
| **Subject:** | NEW CLAIM:  Summons received- 29 Whipple Avenue, Smithfield, RI |
| **Attachments:** | 29 Whipple Avenue- policy.pdf; 29 Whipple Avenue- Summons.pdf |

**Categories:**     Cynthia Miller, Ted Bailey, Rush, Jax

COMPANY NAME/NUMBER = 2600
Owner – Andromeda real estate partners
CLAIM/POLICY TYPE =o
OPERATIONS (OPS) FLAG = n  REFI FLAG = Y  DEFAL = N  PROPERTY CODE = RRs  MTG IN FORECL = n
COMMENTS – if not dpl ASSIGN TO ne/rush (owner ack LTR)
DESCRIPTION – owner claim re:  former owner challenging foreclosure preceding owner's title to piq
AGENT OR OPERATIONS OFFICE – law offices of glenn andreoni
Noc –   tom flynn

Please have a new claim opened on this matter. Our insured was served with a summons and they will need to answer the complaint within 20 days. The summons was generated 2/6/15 but has a "true copy attest stamp" showing a date of 2/11/15.

It appears that Patrick Conley (*owner who lost property at foreclosure*) is suing the current owner (and others) suggesting among other things that the property was sold at foreclosure for far less than the reasonable market value.

Property is located at 29 Whipple Avenue, Smithfield RI.  Conley alleges that the fair market value of the property was $1,050,000.00 and that the property was sold for $152,000.00.

Attached are the summons and Title Policy in question; please let me know if you need anything else to process this request. Thank you.

Sincerely,

*Rebecca Gomes*

Rebecca Gomes
Title Clearance/Underwriting
Commonwealth Land Title Insurance Company
Chicago Title Insurance Company
Fidelity National Title Insurance Company
1 State Street, Suite 600
Providence, RI 02908
Telephone: (401)450-3762
Fax: (401)450-3808
Email: rgomes@cltic.com

1

**Miller, Cynthia**

| | |
|---|---|
| **From:** | Gomes, Rebecca |
| **Sent:** | Thursday, February 19, 2015 10:13 AM |
| **To:** | Title Claims |
| **Cc:** | Perna, Lance |
| **Subject:** | NEW CLAIM: Summons received- 29 Whipple Avenue, Smithfield, RI |
| **Attachments:** | 29 Whipple Avenue- policy.pdf; 29 Whipple Avenue- Summons.pdf |

**Categories:** Cynthia Miller, Ted Bailey, Rush, Jax

COMPANY NAME/NUMBER = 2600
Owner – Andromeda real estate partners
CLAIM/POLICY TYPE =o
OPERATIONS (OPS) FLAG = n  REFI FLAG = Y  DEFAL = N  PROPERTY CODE = RRs  MTG IN FORECL = n
COMMENTS – if not dpl ASSIGN TO ne/rush (owner ack LTR)
DESCRIPTION – owner claim re: former owner challenging foreclosure preceding owner's title to piq
AGENT OR OPERATIONS OFFICE – law offices of glenn andreoni
Noc –  tom flynn

Please have a new claim opened on this matter. Our insured was served with a summons and they will need to answer the complaint within 20 days. The summons was generated 2/6/15 but has a "true copy attest stamp" showing a date of 2/11/15.

It appears that Patrick Conley (*owner who lost property at foreclosure*) is suing the current owner (and others) suggesting among other things that the property was sold at foreclosure for far less than the reasonable market value.

Property is located at 29 Whipple Avenue, Smithfield RI.  Conley alleges that the fair market value of the property was $1,050,000.00 and that the property was sold for $152,000.00.

Attached are the summons and Title Policy in question; please let me know if you need anything else to process this request. Thank you.

Sincerely,

*Rebecca Gomes* ♀ ♀

Rebecca Gomes
Title Clearance/Underwriting
Commonwealth Land Title Insurance Company
Chicago Title Insurance Company
Fidelity National Title Insurance Company
1 State Street, Suite 600
Providence, RI 02908
Telephone: (401)450-3762
Fax: (401)450-3808
Email: rgomes@cltic.com

1